Novella H. TRAGESER, Appellant,

v.

**LIBBIE REHABILITATION CENTER, INC., t/a Libbie Convalescent Home, Appellee.**

No. 77–2224.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1978.

Decided Dec. 18, 1978.

G. Timothy Oksman, Richmond, Va. (Farino & Oksman, Richmond, Va., on brief), for appellant.

Lewis T. Booker, Richmond, Va. (Charles S. McCandlish, Hunton & Williams, Richmond, Va., on brief), for appellee.

United States of America (Drew S. Days, III, Asst. Atty. Gen., Walter W. Barnett and Judith E. Wolf, attys., Dept. of Justice, Washington, D. C., on brief), and National Federation of the Blind (John F. Rick, Richmond, Va., on brief), amici curiae in support of appellant.

Before BUTZNER and HALL, Circuit Judges, and ROBERT F. CHAPMAN, District Judge for the District of South Carolina, sitting by designation.

BUTZNER, Circuit Judge:

Novella H. Trageser appeals the district court's dismissal of her complaint alleging that the termination of her employment at Libbie Rehabilitation Center constituted handicap discrimination in violation of § 504 of the Rehabilitation Act of 1973, the fifth and fourteenth amendments to the Constitution, and 42 U.S.C. § 1983. We affirm because § 120(a) of the Comprehensive Rehabilitation Services Amendments of 1978 forecloses her claim under the Rehabilitation Act of 1973, and lack of governmental action precludes recovery on the other grounds.

I

Libbie, a private corporation, operates a nursing home for profit in Richmond, Vir-

ginia. It receives substantial income from the state and federal governments in the form of Medicare, Medicaid, Veterans Administration, and welfare payments. The purpose of these payments is to compensate for treatment of specified patients who are entitled to the benefits. The home is subject to inspection by the Virginia Department of Health.

Trageser, a registered nurse, was hired in 1971 and promoted to director of nurses in 1975. Her sight is impaired by a condition known as retinitis pigmentosa, which is hereditary and progressive.

On April 28, 1976, the certification officer from the Virginia Department of Health conducted a regular inspection of the nursing home. The inspector told the administrator of the home that Trageser's eyesight had deteriorated since the last inspection and asked what the home intended to do about it. The administrator relayed these comments to the board of directors. At its meeting on June 7, 1976, the board resolved to dismiss her. Upon learning of this decision, Trageser resigned.

Trageser then brought this action seeking reinstatement, back pay, and an injunction against payment of federal financial assistance to the home unless she was reinstated. The district court treated the termination of her employment as tantamount to discharge, but it granted Libbie's motion to dismiss the complaint for failure to state a claim upon which relief could be granted. *See Trageser v. Libbie Rehabilitation Center,* 16 E.P.D. ¶ 8117, 17 F.E.P. Cases 398 (E.D.Va.1977).

## II

■ Trageser bases her claim on § 504 of the Rehabilitation Act of 1973[1] which provides as follows:

No otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

In § 120(a) of the Comprehensive Rehabilitation Services Amendments of 1978, Congress added, among other provisions, § 505(a)(2)[2] which states:

The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under § 504 of this Act.

Title VI contains the prototype of § 504 of the Rehabilitation Act. *See Lloyd v. Regional Transportation Authority,* 548 F.2d 1277, 1280 and n.9 (7th Cir. 1977). Section 601 of Title VI[3] provides as follows:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

The broad prohibition of § 601 is, however, qualified by § 604,[4] which creates the following limitation:

Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.[5]

---

1. 29 U.S.C.A. § 794 (1975).

2. Act of November 6, 1978, Pub.L. No. 95–602, § 120(a), H.R.Conf.Rep. No. 95–1780 on H.R. 12467, 95th Cong., 2d Sess. 29 (1978), 124 Cong.Rec. H12675 (daily ed., Oct. 12, 1978) (to be codified as 29 U.S.C. § 794a(a)(2)).

3. 42 U.S.C. § 2000d.

4. 42 U.S.C. § 2000d–3.

5. The § 604 restriction on enforcement of fair employment practices is tempered in appropriate cases by availability of the remedies of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and of 42 U.S.C. § 1983.

Although § 604 expressly curtails the authority of federal departments and agencies, it also restricts private suits. Thus, because of § 604, Title VI does not provide a judicial remedy for employment discrimination by institutions receiving federal funds unless (1) providing employment is a primary objective of the federal aid,[6] or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid.[7]

Title VII of the Civil Rights Act of 1964 [8] provides the primary statutory remedies for racial and ethnic discrimination in employment. Recognizing this, Congress supplemented the Rehabilitation Act by including in § 120(a) of the 1978 amendments a new subsection 505(a)(1) [9] which makes the pertinent remedies, procedures, and rights of Title VII available to federal employees who complain of handicap discrimination in employment in violation of § 501 of the Rehabilitation Act.[10] Congress also could have utilized Title VII to define the rights and remedies of a person in Trageser's position who must rely on § 504. Instead, for employees of private institutions receiving federal financial aid, § 120(a) of the 1978 amendments makes available only the remedies, procedures, and rights of Title VI, which, as we have noted above, contains the restriction of § 604. The distinction that § 120(a) draws between the relief available to federal employees and that available to employees of private institutions receiving federal assistance could not have been inad-

vertent. We therefore conclude that we must apply the limitation contained in § 604 of Title VI to § 504 of the Rehabilitation Act in literal compliance with § 120(a) of the 1978 amendments.[11]

We cannot accept Trageser's contention that the 1978 amendments are inapplicable to her 1976 dismissal. We must decide this case in accordance with the law as it exists at the time we render our decision " 'unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.' " *Cort v. Ash*, 422 U.S. 66, 76–77, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). In the absence of legislative history to the contrary, the explicit incorporation of § 604 of Title VI simply confirms a plausible reading of § 504 as originally enacted. *See, e. g.*, Guy, The Developing Law on Equal Employment Opportunity for the Handicapped: An Overview and Analysis of the Major Issues, 7 U.Balt.L.Rev. 183, 207 (1978). We therefore find no manifest injustice in applying the amendments to illuminate this case which was pending when they were enacted.

A private action under § 504 to redress employment discrimination therefore may not be maintained unless a primary objective of the federal financial assistance is to provide employment. There has been no such allegation in this case; nor could there be one. Viewing the complaint in the light most favorable to Trageser, in compliance with Federal Rule of Civil Procedure

---

6. *See, e. g., Quiroz v. City of Santa Ana*, 17 E.P.D. ¶ 8631 at p. 7221 (C.D.Calif.1978); *Feliciano v. Romney*, 363 F.Supp. 656, 672 (S.D.N.Y. 1973).

7. *See Caufield v. Board of Education*, 583 F.2d 605 (2d Cir. 1978); *United States v. Jefferson County Board of Education*, 372 F.2d 836, 883 (5th Cir. 1966).

8. 42 U.S.C. § 2000e, *et seq.*

9. Section 505(a)(1) (to be codified as 29 U.S.C. § 794a(a)(1)) provides in pertinent part:
   The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 . . . including the application of sections 706(f) through 706(k) . . .

shall be available, with respect to any complaint under section 501 of this Act, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint.

10. 29 U.S.C. § 791.

11. The Secretary of Health, Education, and Welfare has promulgated regulations to implement § 504 of the Rehabilitation Act of 1973. *See* 45 C.F.R. Part 84 (1977). He has not, however, had an opportunity to conform those regulations to the 1978 amendments incorporating § 604 of Title VI.

12(b)(6), we nevertheless hold that she cannot prevail on her § 504 claim.[12]

## III

■ Trageser also based her complaint on 42 U.S.C. § 1983, the fourteenth amendment, and the equal protection component of the due process clause in the fifth amendment. We conclude, however, that the district court correctly granted Libbie's motion to dismiss these claims.

Section 1983 requires Trageser to show that Libbie acted under color of either a state law or regulation or a state-enforced custom. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 148, 161–69, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). To establish a denial of equal protection of the laws in violation of the fifth and fourteenth amendments, Trageser is required to do more than merely allege governmental regulation of the nursing home. She must demonstrate that Libbie's ostensibly private conduct was in reality an act of either the state or federal government. There must exist "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). To satisfy this requirement, Trageser relies on (1) Libbie's receipt of public funds and (2) the state inspector's role in Libbie's decision to dismiss her.

Libbie did not participate in the Hill-Burton construction program which "subjects hospitals to an elaborate and intricate pattern of governmental regulations, both state and federal." *See Simkins v. Moses H. Cone Memorial Hospital*, 323 F.2d 959, 964 (4th Cir. 1963). Consequently, our decision in *Simkins* which detected state action in the operation of participating hospitals does not control here. Moreover, we have previously held that the receipt of Medicaid funds does not convert private medical care to state action. *Walker v. Pierce*, 560 F.2d 609 (4th Cir. 1977). For similar reasons, we decline to ascribe state action to Libbie's receipt of Medicare and Veterans Administration benefits.

To show state action, Trageser also relies on the query of the state inspector who, noting that her eyesight had deteriorated, asked what Libbie intended to do about it. The inspector did not include this observation about Trageser among the deficiencies found at the home, and Trageser does not allege that the state would or could impose any sanctions on Libbie if it continued to employ her. Libbie's subsequent decision to dismiss her, therefore, cannot be considered an action of the state itself. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

Consequently, neither Libbie's receipt of patients' benefits nor Virginia's regulation of the home constitutes state action sufficient to sustain the § 1983 and constitutional claims.

The judgment of the district court is affirmed.

---

12. Trageser's reliance on *Davis v. Southeastern Community College*, 574 F.2d 1158, 1159 (4th Cir. 1978), is misplaced. That was not an employment discrimination case. She also relies on several § 504 employment discrimination cases, decided prior to the 1978 amendments. *See, e. g., Drennon v. Philadelphia General Hospital*, 428 F.Supp. 809, 814–16 (E.D.Pa. 1977); *Gurmankin v. Costanzo*, 411 F.Supp. 982, 989 (E.D.Pa.1976), *aff'd on other grounds*, 556 F.2d 184 (3d Cir. 1977) (dicta). These cases, however, did not address the application of § 604 of Title VI.