Ida E. MANNING, Plaintiff,

v.

GREENSVILLE MEMORIAL HOSPITAL, Defendant.

Civ. A. No. 78–0200–R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 15, 1979.

Sa'ad El-Amin, and Robert J. Macbeth, Jr., Richmond, Va., for plaintiff.

James C. Roberts, Gary J. Spahn, Mays, Valentine, Davenport & Moore, Richmond, Va., H. Benjamin Vincent, Vincent & Bloom, Emporia, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Ida E. Manning, formerly employed by the defendant as a maid, brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendant hospital, a corporation organized under the laws of Virginia, denied her due process of law when it dis-charged her on or about October 26, 1976. Jurisdiction is appropriate under 28 U.S.C. § 1343(3). Now pending before the Court is defendant's motion to dismiss, or for the entry of summary judgment in its favor.

The parties have submitted affidavits and thorough memoranda in support of their respective positions. The record, construed in the light most favorable to plaintiff, discloses that plaintiff was employed as a maid at defendant hospital for approximately thirteen years prior to October 26, 1976. On that date, plaintiff allegedly carried a package from the hospital through a side door without allowing hospital personnel to inspect the package as provided in its rules. She then allegedly placed the package in the trunk of her car then located in the hospital's parking lot. Upon being requested to grant defendant's agents entry to the trunk of the car, plaintiff advised them that she could not do so because her daughter had the keys, and that, in any event, she had not placed a package inside the trunk. Plaintiff sent for her daughter, but, while plaintiff waited inside the hospital for her daughter's arrival, her daughter went to the car and drove it away. Soon thereafter plaintiff was summarily discharged for failing to cooperate with the hospital in adhering to its rule regarding inspection of packages.

Defendant raises four claims in its motion: (1) that it did not act under color of state law when it dismissed plaintiff; (2) that, even assuming state action, defendant did not violate plaintiff's right to due process of law; (3) that defendant is not a "person" within the meaning of § 1983; and (4) that, if defendant is held to be a state actor, it is shielded from immunity by the Eleventh Amendment to the Constitution of the United States. Agreement by the Court with any one of defendant's contentions would entitle it to summary judgment.

As a threshold matter, plaintiff must show that defendant hospital acted "under color of state law" in the discharge

giving rise to this controversy.[1] The dichotomy between private and state action was first addressed by the Supreme Court in *The Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), and while the general principles may be recited without difficulty, application thereof has produced more than slight differences among the federal courts. The two most recent Supreme Court decisions of significance in this area are *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), and *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Both cases were premised on alleged violations of § 1983, and in each the Court took a somewhat restrictive view of the extent to which the state action concept could be carried.

*Moose Lodge*, the earlier of the two, involved a suit by a black male who was refused service by the appellant club. The question before the Court was whether the issuance of a liquor license to appellant by the state of Pennsylvania constituted sufficient regulation by the state to preclude appellant from distinguishing among whom it chose to serve on the basis of race. The Court held that it did not:

> [W]here the impetus for the discrimination is private, the State must have "significantly involved itself with invidious discriminations" . . . in order for the [challenged] action to fall within the ambit of the constitutional prohibition.

407 U.S. at 173, 92 S.Ct. at 1971 (quoting *Reitman v. Mulkey*, 387 U.S. 369, 380, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967)).

Significantly, in *Moose Lodge* the Court distinguished *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). 407 U.S. at 174–75, 92 S.Ct. 1965. In *Burton*, the Court found state action where a privately owned restaurant that had refused service to a black man was located in a publicly owned and operated building. 365 U.S. at 723–26, 81 S.Ct. 856. The Court asserted in *Burton*

that "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Id.* at 722, 81 S.Ct. at 860. Although the Court in *Moose Lodge* purported to apply the "sifting and weighing" test enunciated in *Burton*, 407 U.S. at 172, 92 S.Ct. 1965, the majority found that the facts of *Moose Lodge* did not demonstrate the "symbiotic relationship" between the state and appellant that existed in *Burton*. *Id.* at 175, 92 S.Ct. 1965.

Two years later, in *Jackson*, the Court faced the issue of whether extensive state regulation of a public utility was sufficient to bring the utility's actions within the sphere of state action. In that instance, petitioner brought suit under § 1983 alleging that the respondent utility had denied her due process in ceasing to provide her electricity. The Court held that, despite the heavy regulation of respondent and its "partial monopoly" status, the state was "not sufficiently connected with respondent's action in terminating petitioner's service so as to make respondent's conduct in so doing attributable to the State for purposes of the Fourteenth Amendment." 419 U.S. at 358–59, 95 S.Ct. at 457.

A close reading of *Jackson* suggests that the Court has narrowed somewhat the state action test since *Burton*. While the *Burton* Court employed the "sifting and weighing" approach, viewing the relationship between the state and the defendant in the aggregate, the *Jackson* Court has directed that the district court scrutinize the relationship of the state to the particular activity of the defendant that is the subject of the litigation:

> [T]he inquiry *must be* whether there is a sufficiently close *nexus between the State and the challenged action* of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.

*Id.* at 351, 95 S.Ct. at 453 (citing *Moose Lodge* ) (emphasis added).

---

1. The "under the color of state law" requirement of 42 U.S.C. § 1983 has generally been considered to be equivalent to the state action requirement of the Fourteenth Amendment. *United States v. Price*, 383 U.S. 787, 794 n.7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

Justice Douglas, dissenting in *Jackson*, noted the departure from *Burton* :

> [T]he dispositive question in any state-action case is not whether any single fact or relationship presents a sufficient degree of state involvement, but rather whether the aggregate of all relevant factors compels a finding of state responsibility. . . .
>
> It is not enough to examine seriatim each of the factors upon which a claimant relies and to dismiss each individually as being insufficient to support a finding of state action. It is the aggregate that is controlling.

*Id.* at 360, 95 S.Ct. at 458 (citations and footnote omitted). Justice Douglas continued to assail the majority, suggesting that it paid no more than "lip service" to *Burton.* *Id.* at 362, 95 S.Ct. 449. He concluded that the Court's adoption of an analysis that was "fundamentally sequential rather than cumulative" constituted a "significant departure from [the Court's] previous treatment of state-action issues." *Id.* at 363, 95 S.Ct. at 459.

Application of the *Jackson* analysis to the instant case requires first that the Court identify whatever ties defendant Greensville Memorial Hospital has with the state, and second, that the Court consider the particular facts of this litigation in light not only of *Jackson*, but also of the long line of decisions in this area by the United States Court of Appeals for the Fourth Circuit. Plaintiff contends that state action results primarily from the hospital's receipt of federal construction funds under the Hill-Burton Act, 42 U.S.C. § 291. An uncontroverted affidavit of Mr. John A. Thurman, defendant hospital's administrator, reveals that Hill-Burton monies have accounted for twenty-one percent of the hospital's cost of construction and expansion, the remaining seventy-nine percent having come from the private sector.[2] Mr. Thurman stated further that Greensville Memorial Hospital is a private, non-profit corporation.

Plaintiff, with some justification, asserts that the rule in this judicial circuit is clear regarding the effect of a hospital's receipt of Hill-Burton funds. Indeed, the following discussion will demonstrate that one can make a strong argument that this Court, under decisions of its Court of Appeals, by which it is bound absent Supreme Court pronouncement, has no choice but to find state action and proceed to consideration of the other issues presented by defendant's motion.[3] The Court has concluded, however, that the Fourth Circuit decisions do not constitute a per se rule that receipt of Hill-Burton funds transforms the recipient into a state actor, and that, in light of the "nexus" test announced by the Supreme Court in *Jackson*, summary judgment must be awarded to the defendant. The instant record, even interpreted most favorably to plaintiff, reveals no connection whatsoever between the "challenged action" (plaintiff's discharge) and the hospital's receipt of Hill-Burton funds. *See Jackson, supra*, 419 U.S. at 351, 95 S.Ct. 449.

An initial reference point is of course the Hill-Burton program itself, for, strictly speaking, it is not the receipt of federal money that converts private action into state action, rather it is the "elaborate

---

**2.** Mr. Thurman's affidavit also reveals that, in the fiscal year ending August 31, 1977, the hospital received approximately fifty percent of its revenue from Medicare and Medicaid. Although plaintiff, in her memoranda responding to defendant's motion, relied to a limited extent on the Medicare/Medicaid funding, the Fourth Circuit apparently has rejected the argument that receipt of such funds by a private hospital makes it a state actor for purposes of § 1983. *See Trageser v. Libbie Rehab. Center*, 590 F.2d 87, 90 (4th Cir. 1978); *Walker v. Pierce*, 560 F.2d 609 (4th Cir. 1977).

**3.** Such a conclusion was reached by the United States District Court for the Western District of Virginia in a recent decision in a case quite similar to the instant suit. *See Large v. Reynolds*, 414 F.Supp. 45 (W.D.Va.1976).

If in fact the Fourth Circuit does have a per se rule of state action in these circumstances, it is in a distinct minority among the circuits. *See Taylor v. St. Vincent's Hospital*, 424 U.S. 948, 949, 96 S.Ct. 1420, 47 L.Ed.2d 355 (1976) (White, J., dissenting from denial of certiorari because the split among the circuits is a "square conflict on an important point of federal law.")

and intricate pattern of governmental regulations," to which a hospital becomes subject in return for federal aid, that may render the hospital's conduct state action. *See Simkins v. Moses H. Cone Memorial Hospital*, 323 F.2d 959, 964 (4th Cir. 1963), *cert. denied*, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964). The Hill-Burton Act is codified at 42 U.S.C. § 291. The numerous subsections of § 291 are couched largely in general terms, stating a broad statutory purpose of improving delivery of health care by assisting financially the construction and improvement of health facilities across the nation. For purposes of the pending litigation, § 291m announce a broad principle of nonintervention in personnel matters and therefore assumes primary significance among the numerous subsections.

> Except as otherwise specifically provided, nothing in this subchapter shall be construed as conferring on any Federal officer or employee the right to exercise any supervision or control over the administration, personnel, maintenance, or operation of any facility with respect to which any funds have been or may be expended under this subchapter.

The relevant Virginia statutory provisions promulgated for purposes of facilitating participation by Virginia hospitals in the Hill-Burton program are codified in Chapter 12 of Title 32 of the Virginia Code. Chapter 12 is silent with respect to the personnel procedures of recipient hospitals. Indeed, all that is stated is that the State Health Commissioner "shall by regulation prescribe minimum standards for the maintenance and operation of hospitals which receive" Hill-Burton aid. *See* Va.Code § 32–206.

The plaintiff has not alleged, nor would the record support an inference, that any provision of state law or any regulation thereunder is even remotely related to employment decisions regarding non-medical hospital personnel. Mr. Thurman's affidavit notes only that plaintiff's discharge was executed in accord with page seventeen of the hospital personnel manual. There is nothing in the record or the personnel manual itself that suggests any "nexus" between the hospital's procedures and any state law or regulation. Nonetheless, there is a long line of Fourth Circuit authority on the issue that requires close analysis.

The seminal Fourth Circuit decision in this area is *Simkins v. Moses H. Cone Memorial Hospital*, 323 F.2d 959 (4th Cir. 1963), *cert. denied*, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964). Plaintiffs in *Simkins* were black doctors, dentists, and patients who sued defendant hospitals because of the hospitals' allegedly discriminatory policies regarding access to staff facilities and patient care. Plaintiffs therein also challenged the separate-but-equal provision of the Hill-Burton Act and a related regulation. 323 F.2d at 961. The court, sitting en banc, noted that "[p]articipation in the Hill-Burton program subjects hospitals to an elaborate and intricate pattern of governmental regulations, both state and federal," *id.* at 964, and that the hospitals had benefited from a "massive use of public funds." *Id.* at 967 (fifteen percent and fifty percent, respectively, of total construction funds of the two hospitals, *id.* at 963). In light of the foregoing factors, the court concluded that, under the "sifting and weighing" test of *Burton, supra*, state action was established. *Id.* at 967. Importantly, however, the court seemed drawn to its holding because the stated purpose of the Hill-Burton program was to promote delivery of quality health care to all citizens. Racial discrimination by Hill-Burton recipients, as required by the separate-but-equal provision of the act, not only contravened the Fourteenth Amendment but also frustrated fulfillment of the statutory purpose. *Id.* at 967–68.

Six years subsequent to *Simkins*, the Fourth Circuit had occasion to address the Hill-Burton/state action question in *Sams v. Ohio Valley General Hospital Association*, 413 F.2d 826 (4th Cir. 1969). *Sams* presented a question regarding the rationality of a state regulation restricting availability of hospital staff privileges based upon the physical location of a physician's office and

practice. *Id.* at 827. No issue of race was before the court, *id.* at 828, but the court noted that the rule "disserved" the citizenry, *id.* at 829, presumably by affecting adversely the delivery of medical care. Citing *Simkins,* the court arguably took a giant stride toward a per se rule of state action by virtue of participation in the Hill-Burton program:

> Substantial Federal moneys invited and flowing into the defendant hospitals under the Hill-Burton Act entail, in return, obligations of observance of Federal constitutional mandates. Disregard of them is State action, for the act trusts *the State* to maintain a fair and just governance of these hospitals accepting the aid of the legislation.

*Id.* at 828 (emphasis added).

A close reading of *Sams* reveals three matters of note. First, the court neither mentioned the "sifting and weighing" test not cited *Burton.* Second, the object of the court's ire apparently was not the hospitals, but was the state regulation, which the hospitals had no choice but to enforce. Third, in its concluding remarks, the court asserted that "[n]ot for a moment do we imply any absence of authority in hospital administrations to regulate staff appointments and hospital privileges." *Id.* at 830. This language suggests that the court's failure to cite *Burton* or to sift and weigh the various contacts between the state and the hospitals may be explained by reasoning that, because the suit resulted from the hospitals' nondiscretionary enforcement of a *state regulation,* state action was simply not a serious issue.

The next two Fourth Circuit decisions in this area, standing alone, support the view that this circuit has adopted a per se rule of state action resulting from receipt of Hill-Burton funds. *See Duffield v. Charleston Area Medical Center, Inc.,* 503 F.2d 512 (4th Cir. 1974); *Christhilf v. Annapolis Emergency Hospital Association, Inc.,* 496 F.2d 174 (4th Cir. 1974). *Christhilf* and *Duffield*

involved interference by a hospital with the staff privileges of a doctor, and, in each case, the court found the participation by the defendant hospitals in the Hill-Burton program alone sufficient to render the hospitals state actors for purposes of 42 U.S.C. § 1983. 503 F.2d at 515; 496 F.2d at 178. More importantly, however, both cases were decided prior to the Supreme Court's decision in *Jackson, supra.* When considered in light of *Jackson,* as well as in light of three relevant Fourth Circuit decisions since *Jackson,* hereinafter addressed in more detail, *Christhilf* and *Duffield* fall short of stating a per se rule that is binding upon this Court.

Further grounds for this Court's reluctance to ascribe weighty precedential value to *Christhilf* and *Duffield* lie in the absence in those decisions of any considered discussion of the state action problem. Instead of "sifting facts and weighing circumstances," as suggested by *Burton, supra,* 365 U.S. at 722, 81 S.Ct. 856, the court essentially assumed state action by citing the *Sams* and *Simkins* decisions. 503 F.2d at 515; 496 F.2d at 178. *Sams* and *Simkins,* however, do not require a per se rule of state action whenever a hospital has participated in the Hill-Burton program. As the earlier discussion of these decisions suggests, a finding of state action in both instances was predicated on more state involvement than mere receipt of Hill-Burton funds. Indeed, the facts under those cases were such that, even under the narrow "nexus" analysis, both retain their vitality. State action in *Simkins* could rest solely on the hospitals' adherence to the separate-but-equal provision of the original Hill-Burton Act. Similarly, state action in *Sams* could be found to result from the fact that the challenged action was a regulation of the state, the enforcement of which was not a matter of discretion with the defendant hospitals.[4]

The Supreme Court's decision in *Jackson* and the enunciation therein of the "nexus" standard is the pivotal point for the instant

---

4. For an interesting discussion of the Hill-Burton/state action problem, including an analysis of post-*Simkins* decisions by the Fourth Circuit, see Note, *Judicial Review of Private Hospital Activities,* 75 *Mich.L.Rev.* 455 (1976).

analysis. Since the ruling in *Jackson*, the Fourth Circuit has had three opportunities to assess its impact on the Hill-Burton state. action issue. As the following discussion will indicate, however, none of these cases presented the issue squarely.

In *Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638 (4th Cir. 1975), nearly eleven months after the decision in *Jackson*, the Fourth Circuit considered a class action brought against the defendant hospital for its refusal to allow the named plaintiff to undergo an elective abortion not necessary to save the life of the mother. *Id.* at 640. Notwithstanding the defendant's participation in the Hill-Burton program, and its receipt of Medicare and Medicaid funds, the district court found state action lacking and dismissed the suit. The Court of Appeals reversed, noting not only that the trial court "completely ignored a clear line of Fourth Circuit decisions to the contrary," but also that the defendant was the same hospital found to be a state actor in *Duffield*. *Id.* at 642.

Significantly, however, the court acknowledged that other circuits have treated receipt of Hill-Burton funds differently, but the court did not suggest en banc reconsideration of its rule, at least partially because *Doe* was not deemed an appropriate vehicle for so doing. *Id.* The court's rationale was that state action in *Doe* could be found on grounds other than mere receipt of Hill-Burton funds: "[I]n addition to Hill-Burton funding and other financial and regulatory involvement by the state, we find state involvement in the specific hospital policy under attack." *Id.* at 642–43 (footnotes omitted).

The "state involvement" in *Doe* on which the court grounded its finding of state action was the West Virginia criminal abortion statute, which made it a felony to perform an abortion except to save the life of the mother or child. *Id.* at 640–41 n.2, 643 n.11. Because the record reflected that this statute was the basis for the hospital's

policy, the court faced a situation analogous to that in *Sams, supra*, where the challenged action of the defendant was its adherence to a state regulation. Receipt of Hill-Burton funding therefore was not a necessary factor in the state action calculus.

Notwithstanding that the court in *Doe* neither discussed nor cited *Jackson*, the court scrupulously applied the *Jackson* test: "We hold that CAMC's anti-abortion policy based on West Virginia's criminal abortion statute involved the state sufficiently to constitute the policy 'state action' under 42 U.S.C. § 1983." *Id.* at 643. The court might as readily, yet no more effectively, have quoted *Jackson* and said that there was a "sufficiently close nexus between the State and the challenged action" of the defendant, *see* 419 U.S. at 351, 95 S.Ct. at 453.

Thus *Doe* did not require the Fourth Circuit to address directly whether participation in the Hill-Burton program alone transmutes all the activities of an otherwise private hospital into state action. Moreover, the narrowness of the court's holding and its consistency with the dictate of *Jackson* support a finding in the instant case that plaintiff's discharge by Greensville Memorial Hospital was not state action.

The Fourth Circuit's second post-*Jackson* treatment of the Hill-Burton/state action question came in *Walker v. Pierce*, 560 F.2d 609 (4th Cir. 1977). In *Walker*, two black women sued an obstetrician and a hospital, among others, on the grounds that the doctor's personal policy of refusing to treat indigent pregnant mothers expecting a third child unless they consented to a post-delivery tubal ligation violated their civil rights. *Id.* at 610–11. The court affirmed the verdict below in favor of the hospital and did not address the state action question relative to the hospital even though it had received Hill-Burton funding. *Id.* at 613.[5] The principal issue considered by the court was whether the defendant obstetrician acted under color of state law simply

---

5. The Court may have chosen not to address the issue simply because the merits of the case so clearly were with the defendant hospital.

Indeed, most defendants benefited from directed verdicts. *Id.*

because he practiced in a hospital that was a Hill-Burton participant. The court quickly concluded that he was not a state actor, and on that basis reversed the verdict that had been rendered against him. *Id.* Like *Doe,* therefore, *Walker* did not afford the Fourth Circuit an appropriate opportunity to address its prior Hill-Burton/state action decisions in light of *Jackson,* nor does *Walker* preclude this Court from concluding that there was no state action in the matter currently under litigation.

The sole reference to *Jackson* by the panel deciding *Walker* came in Judge Butzner's dissent from the court's conclusion that the obstetrician did not act under color of state law. *Id.* at 614–15. Judge Butzner, explicitly applying both the "sifting and weighing" test of *Burton* and the nexus test of *Jackson,* asserted that the obstetrician's heavy participation in Medicaid rendered him a state actor. *Id.* at 615. Judge Butzner, understandably, did not make reference to Hill-Burton funding, for his analysis focused solely on the effect of the doctor's actions under Medicaid.

In relation to the instant suit, perhaps the most important aspect of the *Walker* decision is Judge Butzner's brief recitation of the state action analysis under *Burton* and *Jackson* : "Action under color of law may be found when (A) the state is involved in the questioned activity, or (B) a private actor has assumed a state or public function." *Id.* Judge Butzner concluded that the defendant obstetrician was a state actor under both tests, first because he operated as an "integral part of a comprehensive governmental program [(Medicaid)]" receiving therefor "substantial public funds," and second, because he "assumed a state function" through his participation in the administration of the Medicaid program. *Id.* Application of this analysis to the instant case leaves little doubt that Ida Manning's discharge was not state action. Rather, her firing was a matter of internal

hospital administration over which the state had no control and in which the state could hardly be shown to have had any interest.

The Fourth Circuit's most recent treatment of the Hill-Burton/state action question, like *Doe* and *Walker,* provides no clear guidance to this Court in the context of the instant action. In *Trageser v. Libbie Rehabilitation Center,* 590 F.2d 87 (4th Cir. 1978), the court affirmed the lower court's dismissal of plaintiff's complaint for wrongful discharge on the ground that, *inter alia,* defendant did not act under color of state law. *Id.* at 90.

State action was alleged to rest on Libbie's receipt of public funds and its regulation by the State of Virginia. *Id.* The Court of Appeals, speaking through Judge Butzner, explicitly applied the *Jackson* nexus test. *Id.* State action was found to be lacking because: (1) Libbie did not participate in the Hill-Burton program, (2) receipt by Libbie of Medicare, Medicaid, and Veterans Administration benefits did not "convert private medical care to state action," and (3) the plaintiff failed to demonstrate how the state, through its inspector and its regulations applicable to Libbie, played any role in Libbie's decision to discharge her. *Id.* Therefore, because Libbie had not participated in the Hill-Burton program, the court had no occasion to address the Hill-Burton/state action question in light of *Jackson.*

In summary, the Fourth Circuit may not fairly be said to have a per se rule of state action whenever an otherwise private hospital has received Hill-Burton funds and thus becomes subject to state regulation. Only two of the seven decisions hereinabove discussed, *Duffield* and *Christhilf,* support the opposite conclusion, and both of these were decided without the guidance of the Supreme Court's opinion in *Jackson.* As heretofore noted, the Fourth Circuit's two earliest rulings in this area, *Simkins* [6] and *Sams,*

**6.** Three Fourth Circuit decisions may be tied directly to *Simkins* because each involved racial discrimination by hospitals, two of which were Hill-Burton participants and one of which was otherwise linked directly to the state. *See* *Cypress v. Newport News General and Nonsectarian Hospital Association,* 375 F.2d 648 (4th Cir. 1967); *Smith v. Hampton Training School for Nurses,* 360 F.2d 577 (4th Cir. 1966); *Eaton v. Grubbs,* 329 F.2d 710 (4th Cir. 1964). In

are clearly consistent with *Jackson*. The same may be said of the post-*Jackson* decisions. *Duffield* and *Christhilf*, however, seem of dubious precedential value now that federal courts must apply the narrow nexus test of *Jackson*.

■ In the instant suit, *Jackson* compels a finding of no state action. Ida Manning points only to Hill-Burton, Medicare, and Medicaid as the sources of the alleged state action. There is no averment that the defendant's board of directors or management personnel are appointed by the state or a state agency. Nor is there anything in the record to suggest that plaintiff's discharge was either pursuant to a state policy or regulation or subject to any review or approval by the state. Rather, the uncontradicted affidavit of Mr. Thurman, the hospital administrator, states that plaintiff was an employee "terminable at will pursuant to hospital regulations."[7] Accordingly, because plaintiff can point to no nexus between the asserted contacts with the state and the isolated decision of the hospital administrator to discharge her, her discharge cannot be elevated to the level of state action for purposes of 42 U.S.C. § 1983.

■ Although plaintiff has not raised the point, it occurs to the Court that Greensville Memorial Hospital may be the only hospital in plaintiff's community. Assuming, arguendo, that it is, the Court can envision an argument by plaintiff to the effect that defendant, a recipient of substantial governmental aid, enjoys a monopoly in health care delivery in plaintiff's community and therefore should be considered a state actor because of the state's control over hospital licensing, construction, and, to some extent, operation. *See* Va.Code §§ 32–198, –299, and –300. *See generally* Title 32 of the Virginia Code.

The flaw in any such contention lies in the rejection by the Supreme Court of similar arguments in *Jackson*, 419 U.S. at 350–52, 95 S.Ct. 449, and in *Moose Lodge*, 407 U.S. at 175–77, 92 S.Ct. 1965. In each of these decisions the Court found no connection between the state's involvement and the asserted wrongful conduct. Moreover, the challenged action in *Jackson* —termination of electrical service—would be substantially closer to the state interest in the provision of electricity to the citizenry than the discharge of a maid is to the delivery of health services. Had petitioner Jackson been a former employee of Metropolitan Edison, suing for wrongful discharge, the Supreme Court arguably would have faced a considerably less complex case.

Because the Court is without benefit of an opinion of the Fourth Circuit wherein that court directly considered the Hill-Burton/state action question in light of *Jackson*, the Court has extended its research to relevant decisions by the other circuits. A survey of the cases in those circuits reveals the overwhelming weight of authority to be contra to a finding of state action premised solely upon a hospital's receipt of Hill-Burton funds.[8]

---

each case, the Court assumed state action and proceeded, without discussion, straight to the merits. Because all of these were decided prior to *Jackson*, and further because of their similarity, with one another and with *Simkins*, they do not warrant additional discussion with respect to development of Fourth Circuit authority on the Hill-Burton/state action question.

7. The Court notes that the plaintiff's account of her discharge, which the Court accepts as factual at this stage of the litigation, suggests some unfairness by the defendant to an employee of thirteen years. The Court's sympathy notwithstanding, the Supreme Court, ever mindful of the appropriate reach of the federal judiciary, has noted in a related context that the "Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976).

8. All circuits save the District of Columbia have addressed the question, all except the Sixth and Tenth Circuits have considered the issue in light of *Jackson*, and only the First Circuit has applied *Jackson* and found state action on the part of an ostensibly private hospital.

Circuit decisions finding no state action despite participation in the Hill-Burton program are: *Musso v. Suriano*, 586 F.2d 59 (7th Cir. 1978); *Hodge v. Paoli Memorial Hospital*, 576 F.2d 563 (3d Cir. 1978); *Madry v. Sorel*, 558

For the foregoing reasons, therefore, the Court concludes as a matter of law that Greensville Memorial Hospital's discharge of Ida Manning was not "under color of state law" for purposes of 42 U.S.C. § 1983. Having so concluded, the Court need not address, and thus expresses no opinion with respect to, the three alternative grounds on which the defendant has predicated its motion for summary judgment.

■ One further issue, of a procedural nature, on which the Court has already ruled, does warrant discussion. During the pendency of the motion to which the Court has addressed itself in this memorandum, but before defendant had filed an answer to the complaint, plaintiff moved for leave to file an amended complaint asserting a claim of racial discrimination under 42 U.S.C. § 1981. Defendant has since filed its answer to the original complaint, perhaps in an effort to avoid the operation of that part of Rule 15(a), Federal Rules of Civil Procedure, that allows plaintiff to amend "once as a matter of course . . . before a responsive pleading is served." Both plaintiff and defendant, under the apparent assumption that leave of court was required for the filing of the amended complaint, have briefed the issue diligently. The Court is of the view that such leave was not required in light of the fact that a motion

F.2d 303 (5th Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Schlein v. Milford Hospital, Inc.*, 561 F.2d 427 (2d Cir. 1977); *Briscoe v. Bock*, 540 F.2d 392 (8th Cir. 1976); *Taylor v. St. Vincent's Hospital*, 523 F.2d 75 (9th Cir. 1975), *cert. denied*, 424 U.S. 948, 96 S.Ct. 1420, 47 L.Ed.2d 355 (1976); and *Ward v. St. Anthony Hospital*, 476 F.2d 671 (10th Cir. 1973) (pre-*Jackson*, only five percent of construction from Hill-Burton).

The Sixth Circuit, which, like the Tenth Circuit, has not considered the issue in light of *Jackson*, apparently has adopted a flexible approach. *Compare Jackson v. Norton—Children's Hospitals, Inc.*, 487 F.2d 502 (6th Cir. 1973), *cert. denied*, 416 U.S. 1000, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974) (no state action where only involvement was Hill-Burton participation and general state regulations governing hospitals), *with O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140 (6th Cir. 1973) (state action based on Hill-Burton participation, as well as facts that defendant was only hospital in county, hospital leased premises from county for fifteen years for $1.00, and make-up of hospital's board subject to terms of lease). *O'Neill* may be distinguished on two grounds. First, there was substantially more state intertwinement with the hospital there than in the instant case. Second, and more importantly, the decision in *O'Neill* seems questionable in light of the Supreme Court's decision in *Jackson*.

Perhaps the most interesting of all the post-*Jackson* Circuit Court decisions that have addressed the state action issue with respect to an ostensibly private hospital is *Downs v. Sawtelle*, 574 F.2d 1 (1st Cir. 1978), *cert. denied*, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978). In that case, the court, speaking through Chief Judge Coffin, found state action in a suit against a hospital with numerous state contacts. The opinion is silent regarding whether the hospital received Hill-Burton funding. Nevertheless, Judge Coffin's considera-

tion of the state action issue contains an insightful discussion and application of both *Burton v. Wilmington Parking Authority, supra*, and *Jackson*. Evidently disagreeing with Mr. Justice Douglas' conclusion that *Jackson* had severely cut back on *Burton's* expansive view of state action, *see Jackson,* 419 U.S. at 360–63, 95 S.Ct. 449 (Douglas, J., dissenting). Judge Coffin asserted that:

> The essence of *Burton* which survives *Jackson* is that the relationship between the state and the private institution may be so intertwined that the state will be held responsible for conduct of the institution with which it had no direct connection.

574 F.2d at 9 (footnote omitted).

State action in *Downs* emanated from a variety of sources, primary among them being appointment of the defendant hospital's entire board of trustees by the selectmen of the town in which the hospital was located. *Id.* at 7.

> The town's appointment of the entire board, general governmental support and regulation of the hospital, the town's right to receive profits and, on dissolution, the hospital's assets, together constitute such a close relationship that the conduct of the hospital must be attributed to the government even though a "nexus" in the *Jackson* sense is not present.

*Id.* at 9 (footnote omitted).

Judge Coffin's approach is by far the most expansive post-*Jackson* interpretation of state action of those reviewed by the Court in its consideration of the instant litigation. Nonetheless, even if *Downs* were a Fourth Circuit decision, its application to the record before the Court would not mandate a finding that Greensville Memorial Hospital be subject to suit under 42 U.S.C. § 1983 for its discharge of Ida Manning. Indeed, where the defendant hospital in *Downs* was practically a branch of the town government, the record in the pending case shows substantially fewer links between the state and defendant hospital.

for summary judgment is not a "responsive pleading," *see* 3 *Moore's Federal Practice* ¶ 15.07[2] (2d ed. 1978).

 Notwithstanding defendant's assertions to the contra, the Court believes that, even were leave required, justice would be better served by granting, as the Court has done, plaintiff's motion. The delay was not undue, and the case's relative dormancy over the past several months could hardly have prejudiced defendant unduly. In any event, defendant has now responded to the amended complaint and the parties are at issue in this regard.

For the reasons heretofore stated, defendant's motion for summary judgment as to the plaintiff's claim under 42 U.S.C. § 1983 will be granted, and the matter will be set for trial on the issue raised in the amended complaint.

An appropriate order shall issue.