**William E. JONES, Plaintiff,**

v.

**METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY, Defendant.**

**Civ. A. No. C80–2005.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 27, 1981.

Alexander J. Repasky, Atlanta, Ga., for plaintiff.

Paul A. Howell, Jr., Denise Caffrey, Francis Toole-MARTA, Atlanta, Ga., for defendant.

## ORDER

MOYE, Chief Judge.

Plaintiff William E. Jones brought this suit against the Metropolitan Atlanta Rapid Transit Authority (MARTA) pursuant to section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The plaintiff alleges that MARTA is a recipient of federal financial assistance as contemplated by section 504 and has discriminated against him, an otherwise qualified handicapped individual as defined by 29 U.S.C. § 706(7), solely by reason of his handicap. As a result, plaintiff seeks actual and punitive damages, recovery for mental anguish, pain and suffering, and reinstatement to his former position as a bus driver.

Defendant MARTA has moved for summary judgment or, alternatively, partial summary judgment. Defendant's motion for summary judgment rests on the argument that plaintiff lacks standing to sue under section 504; its argument for partial summary judgment seeks a ruling that recovery may not be had for general or punitive damages under section 504 as a matter of law or that recovery for those types of damages is barred by the applicable statute of limitations. The Court first considers the threshold issue of standing.

Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, on which plaintiff relies for recovery provides:

No otherwise qualified handicapped individual in the United States, as defined

in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

Section 504(a)(2) of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794(a)(2), provides:

The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by an act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

Therefore, one must look to Title VI of the Civil Rights Act of 1964 to determine the remedies, procedures, and rights of the plaintiff.

Title VI, Section 601, 42 U.S.C. § 2000d, provides:

No person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Title VI, Section 604, 42 U.S.C. § 2000d–3, provides:

Nothing in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organizations except where a primary objective of the Federal financial assistance is to provide employment.

The Congress, in enacting the Rehabilitation Act of 1973, generally patterned the legislation after the Civil Rights Act of 1964. Specifically, Congress patterned section 504 after Title VI of the Civil Rights Act and section 901 of the Education Amendments Act of 1972. *See* S.Rep.No. 93–1297, 93d Cong., 2d Sess. 39, *reprinted in* [1974] U.S.Code Cong. & Ad.News 6373, 6390. Since November 2, 1980, the Attorney General has coordinated the administration and enforcement of section 504 at the direction of the President since the Rehabilitation Act does not provide for the enforcement of its provisions. Exec. Order No. 12,250, 45 Fed.Reg. 72,995 (1980), *reprinted in* 42 U.S.C. § 2000d–1 note, at 199 (Supp.1980). Prior to the issuance of that executive order the responsibility for administering and enforcing section 504 had rested with the Secretary of Health and Human Services. Exec. Order No. 11,914 § 5, 45 C.F.R. Part 85, app. A (1979), *reprinted in* 29 U.S.C. § 794 note (1976). Both executive orders, however, provided for the issuance by the various federal departments and agencies of appropriate guidelines or regulations to insure the proper application of section 504 to recipients of federal financial assistance as long as those regulations were consistent with the requirements of the Secretary of Health and Human Services, and later, the Attorney General. *See* Exec. Order No. 11,914 § 2; Exec. Order No. 12,250 § 1–402.

The specific provisions of the Rehabilitation Act recited above are in part the result of the 1978 Amendments to the Rehabilitation Act. The 1978 Amendments made available to those aggrieved under section 504 the remedies, rights, and procedures available under Title VI of the Civil Rights Act of 1964 and provided attorneys' fees to prevailing private litigants. *See* 29 U.S.C. § 794a(a)(2) and (b). The 1978 Amendments also limited the reach of section 504 by the express refusal of section 604 of Title VI of the Civil Rights Act of 1964 to

authorize government enforcement actions against a recipient of federal aid unless a primary objective of the federal financial assistance is to provide employment. *See* 29 U.S.C. § 794a(a)(2) (reprinted *supra*) and 42 U.S.C. § 2000d–3 (reprinted *supra*). While Congress in 1978 burdened section 504 of the Rehabilitation Act with the limitations of section 604 of the Civil Rights Act, it chose not to so burden section 501 of the Rehabilitation Act. The 1978 Amendments made the remedies, procedures, and rights set forth in Title VII of the Civil Rights Act of 1974 applicable to section 501 and those remedies, procedures, and rights include no limitations as found in section 604. *See* 29 U.S.C. § 794a(a)(1) and 42 U.S.C. § 2000e–15.

Having outlined the statutory setting of this suit, the Court now considers defendant MARTA's motion for summary judgment. MARTA contends that since the remedies, procedures, and rights under section 504 are those remedies, procedures and rights available under Title VI of the Civil Rights Act, it follows that a complainant alleging handicapped discrimination in employment pursuant to section 504 must show that the purpose of the federal financial assistance received by the employee is to provide employment, as required by section 604 of the Civil Rights Act, as explained above. As MARTA notes, the three United States Courts of Appeal which have considered this question have all so held. *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226 (7th Cir. 1980); *Carmi v. Metropolitan St. Louis Sewer District*, 620 F.2d 672 (8th Cir. 1980), *cert. denied*, 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980); *Trageser v. Libbie Rehabilitation Center, Inc.*, 590 F.2d 87, 89 (4th Cir. 1979), *cert. denied*, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). The court in *Simpson* held that to maintain an action for employment discrimination under section 504, a handicapped individual must be an intended beneficiary of the federal financial assistance received by his employer or must be able to show that the discrimination directed against him affected the beneficiaries of such aid. 629 F.2d at 1227. MARTA, in addition, refers the

Court to *United States v. Jefferson County Board of Education*, 372 F.2d 836 (5th Cir. 1966), wherein the Fifth Circuit held that section 604 of the Civil Rights Act of 1964 limits the applicability of Title VI to discrimination against the beneficiaries of the federally assisted programs and does not apply to discrimination against employees of federally assisted programs unless the employees are the intended beneficiaries of the program. *Id.* at 882–83.

MARTA argues, therefore, that the plaintiff herein must show that the purpose of the federal financial assistance to MARTA is to provide employment or that the alleged discrimination directed against him affects the beneficiaries of such aid. MARTA has supplemented the record with the affidavits of Alan F. Keipper, MARTA General Manager, and Carroll O. Olson, MARTA Urban Mass Transportation Administration (UMTA) Coordinator, who have stated that MARTA is the recipient of federal financial assistance in the form of engineering and construction grants and operating subsidiaries received from the United States Department of Transportation as administered by UMTA. Olson's affidavit has attached to it all of the grant contracts received by MARTA from UMTA for operating assistance from July 1, 1976, through June 30, 1981. MARTA's argument is, of course, that these affidavits and copies of grants, along with the findings and purposes of the Urban Mass Transportation Act, 49 U.S.C. § 1601 *et seq.*, which it recites, indicate clearly that plaintiff Jones may not recover under section 504 of the Rehabilitation Act since the federal financial assistance MARTA receives does not have as a primary objective the provision of employment.

In response to MARTA's defense based on lack of standing to sue the plaintiff has made few arguments. Plaintiff first relies upon *Poole v. South Plainfield Board of Education*, 490 F.Supp. 948 (D.N.J.1980), which held that section 504 is applicable to the interscholastic athletic activities of a school system receiving federal funding even if none of the federal funds are specif-

ically spent on interscholastic athletics. *Id.* at 951. While the court may have broadly defined "program or activity" as found in section 601 of the Civil Rights Act of 1964, it did nothing to eliminate section 604's limitation of section 504 to programs or activities receiving Federal financial assistance where a primary objective of the federal financial assistance is to provide employment.

With respect to defendant's reliance on *Simpson, Carmi,* and *Trageser,* the plaintiff states his belief that they incorrectly applied section 604 of the Civil Rights Act to section 504 of the Rehabilitation Act since section 604, as written, is a prohibition against suits by departments or agencies of the government. Each case, however, explained in varying degrees of detail why it was holding that although section 604 expressly curtails the authority of federal departments and agencies it also restricts private suits. *See Trageser v. Libbie Rehabilitation Center,* 590 F.2d 87, 89 (4th Cir. 1978) (holding section 604 applicable to private suits without explanation); *Carmi v. Metropolitan St. Louis Sewer District,* 620 F.2d 672, 674–75 (8th Cir. 1980) (holding section 604 applicable to private suits based on the legislative history of Title VI); *Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d 1226, 1235 (7th Cir. 1980) (holding that Congress did not intend to extend protection under Title VI to any *person* other than an intended beneficiary of federal financial assistance based on the legislative history of Title VI). The Fifth Circuit case discussed above, *United States v. Jefferson County Board of Education,* 372 F.2d 836 (5th Cir. 1966) inferred its agreement with the above holdings when it stated that section 604 clearly excluded the application of Title VI to a farmer receiving benefits under the Agricultural Adjustment Act. 372 F.2d at 883. If the limitations of section 604 apply to a farmer despite the section's reference to agencies and departments, they also apply to plaintiff. The Court therefore finds section 604 applicable to plaintiff Jones.

In response to the materials in the record indicating the purposes of the Urban Mass Transportation Act, 49 U.S.C. § 1601 *et seq.,* which are applicable due to the above finding, plaintiff argues that the rules and regulations promulgated under the Act make clear that funds disbursed thereunder are for the purpose of employment of labor. In addition, plaintiff argues that the plaintiff is an intended beneficiary under the Urban Mass Transportation Act since his affidavit shows the position he now holds (checker) and the one he seeks (driver) are partially funded by federal grants for engineering, construction, and operations. The Court is unpersuaded that MARTA's use of federal funds for operations, engineering, or construction alters Congress' stated purposes for the appropriation of public funds. The Court will not base its conclusion as to the primary purposes of Congress' appropriations of federal funds for MARTA on MARTA's use of the funds when the Congress itself has explained its purposes.

Finally, the Court considers plaintiff's reference in his supplemental brief to an Order of the Secretary of Transportation issued January 19, 1977, a certified copy of which was attached to plaintiff's brief. The order was Department of Transportation's implementation of Title VI, the Department's regulations, and the Department of Justice's regulations issued pursuant to Exec. Order No. 11,764, 39 Fed.Reg. 2,575. However, Exec. Order No. 11,764 was revoked by Exec. Order No. 12,250, 45 Fed. Reg. 72,995 (1980), and 49 C.F.R. Part 27, based upon 44 Fed.Reg. 31,468 (1979), now apparently provides the Department of Transportation's regulations with respect to section 504 of the Rehabilitation Act. Pursuant to section 1–504 of Exec. Order No. 12,250, which allowed existing agency regulations to continue in effect upon the issuance of said executive order, 49 C.F.R. Part 27 appears to remain as the Department of Transportation's guidelines with respect to the matters discussed therein, namely discrimination on the basis of handicap in programs and activities receiving or benefitting from federal financial assistance.

The Court is puzzled by plaintiff's failure to rely upon 49 C.F.R. §§ 27.31 to 27.37

which, in section 27.31(a)(1), broadly states that no qualified handicapped applicant for employment, or an employee shall, on the basis of handicap, be subjected to discrimination in employment under *any program or activity that receives or benefits from federal financial assistance.* That regulation, if applicable, would provide plaintiff with the standing he seeks under the facts alleged in his complaint. The Court, however, believes that 49 C.F.R. § 27.31(a)(1)'s failure to include within its proscription the limitation of section 604 of the Civil Rights Act of 1964 means that the Secretary of Transportation, who relied upon section 504 of the Rehabilitation Act, section 16(a) of the Urban Mass Transportation Act, 49 U.S.C. § 1612(a), and section 165(b) of the Federal Aid Highway Act of 1973, as amended, 23 U.S.C. § 142 note, as his authority for the promulgation of this regulation, exceeded his statutory authority in applying section 504 to *any* program or activity that receives or benefits from federal financial assistance.

■ The Court's attempt to locate other cases brought pursuant to section 504 of the Rehabilitation Act against a recipient of funds from the Department of Transportation in order to determine how other courts have reconciled 49 C.F.R. § 27.31 with the applicable provisions of the Rehabilitation Act and Title VI met with little success. The only case the Court could locate, *Lestrange v. Consolidated Rail Corp.,* 501 F.Supp. 964 (M.D.Pa.1980), involved a suit by an amputee against a railroad which had received federal financial assistance from the Department of Transportation in the form of loans under the Regional Rail Reorganization Act of 1973, 45 U.S.C. §§ 701-79. The Court concluded, as did *Trageser* and *Carmi,* discussed above, that the restriction of section 604 of Title VI is applicable to a case brought pursuant to section 504 of the Rehabilitation Act, requiring a finding as to the primary objectives of the Rail Act. 501 F.Supp. at 968-69. The court never considered 49 C.F.R. or the failure of 49 C.F.R. § 27.31 to limit its applicability to recipients of federal funds to those whose primary objective was to provide employment. This Court, apparently in a case of first impression, finds 49 C.F.R. Part 27, Subpart B (Employment Practices), to have exceeded the statutory authority vested in the Secretary of Transportation inasmuch as it is inconsistent with the Rehabilitation Act's deference to Title VI of the Civil Rights Act for its applicable remedies, procedures, and rights.

■ The sole question remaining for discussion with respect to defendant's motion as it relates to standing is whether providing employment is in any conceivable way a primary purpose of the legislation under which MARTA has received its funds. MARTA's grants are products of the Urban Mass Transportation Act, 49 U.S.C. § 1601 *et seq.* The findings and purposes of the Act and the assistance granted pursuant thereto are included in §§ 1601, 1601a and 1601b, which read as follows:

§ 1601. *Declaration of findings and purposes*

(a) The Congress finds—

(1) that the predominant part of the Nation's population is located in its rapidly expanding metropolitan and other urban areas, which generally cross the boundary lines of local jurisdictions and often extend into two or more States;

(2) that the welfare and vitality of urban areas, the satisfactory movement of people and goods within such areas, and the effectiveness of housing, urban renewal, highway, and other federally aided programs are being jeopardized by the deterioration or inadequate provision of urban transportation facilities and services, the intensification of traffic congestion, and the lack of coordinated transportation and other development planning on a comprehensive and continuing basis; and

(3) that Federal financial assistance for the development of efficient and coordinated mass transportation systems is essential to the solution of these urban problems.

(b) The purposes of this chapter are—

(1) to assist in the development of improved mass transportation facilities, equipment, techniques, and methods, with the cooperation of mass transportation companies both public and private;

(2) to encourage the planning and establishment of areawide urban mass transportation systems needed for economical and desirable urban development, with the cooperation of mass transportation companies both public and private; and

(3) to provide assistance to State and local governments and their instrumentalities in financing such systems, to be operated by public or private mass transportation companies as determined by local needs.

§ 1601a. *Additional declaration of findings and purpose*

The Congress finds that the rapid urbanization and the continued dispersal of population and activities within urban areas has made the ability of all citizens to move quickly and at a reasonable cost an urgent national problem; that it is imperative, if efficient, safe, and convenient transportation compatible with soundly planned urban areas is to be achieved, to continue and expand this chapter; and that success will require a Federal commitment for the expenditure of at least $10,000,000,000 over a twelve-year period to permit confident and continuing local planning, and greater flexibility in program administration. It is the purpose of this Act to create a partnership which permits the local community, through Federal financial assistance, to exercise the initiative necessary to satisfy its urban mass transportation requirements.

§ 1601b. *Additional declaration of findings*

The Congress finds that—

(1) over 70 per centum of the Nation's population lives in urban areas;

(2) transportation is the lifeblood of an urbanized society and the health and welfare of that society depends upon the provision of efficient economical and convenient transportation within and between its urban areas;

(3) for many years the mass transportation industry satisfied the transportation needs of the urban areas of the country capably and profitably;

(4) in recent years the maintenance of even minimal mass transportation service in urban areas has become so financially burdensome as to threaten the continuation of this essential public service;

(5) the termination of such service or the continued increase in its cost to the user is undesirable, and may have a particularly serious adverse effect upon the welfare of a substantial number of lower income persons;

(6) some urban areas are now engaged in developing preliminary plans for, or are actually carrying out, comprehensive projects to revitalize their mass transportation systems to continue to provide vital service.

These findings and purposes contain no stated or implied purpose to provide employment. While the federal funds MARTA receives may have an incidental effect on employment, the Court is unable to conclude that creating jobs is a primary objective of the Urban Mass Transportation Act, or that the plaintiff herein, a checker seeking to become a driver, is an intended beneficiary of the funds MARTA receives. Consequently, the Court concludes that the limitation of section 604 of the Civil Rights Act of 1964 denies plaintiff Jones of standing to bring suit against MARTA for alleged employment discrimination on the basis of his disability. Defendant's motion for summary judgment is therefore GRANTED, and plaintiff's pending motion for trial by jury is DENIED as moot.