510 F.Supp. 892 (1981)
John SABOL, an individual, Plaintiff,
v.
The BOARD OF EDUCATION OF the TOWNSHIP OF WILLINGBORO, COUNTY OF BURLINGTON, a body corporate and politic of the State of New Jersey; Jerrold Foltz, Margaret Reynolds, Alphonse A. Brancaccio, Patricia Harper, Ronald Jackson, Carole Levine, Alice Martello, Maucie Miller, Delbert S. Payne, individually and as members of the Board of Education of the Township of Willingboro; Elmer F. Corda, individually and as Secretary and School Business Administrator of the Board of Education of the Township of Willingboro, and Peter J. Romanoli, individually and as Superintendent of Schools of the Township of Willingboro, Defendants.
Civ. A. No. 80-532.
United States District Court, D. New Jersey.
March 27, 1981.
*893 Joel S. Selikoff, Selikoff & Cohen, P. A., Cherry Hill, N. J., for plaintiff.
Warren, Goldberg & Berman, P. A., Princeton, N. J., for defendants.
Cathy S. Surace, Civil Rights Division Dept. of Justice, Washington, D. C., amicus curiae.

OPINION
DEBEVOISE, District Judge.
Plaintiff John Sabol brought suit against federally funded Willingboro Board of Education alleging that his discharge from his position as an art teacher solely because of a physical handicap constitutes discrimination in violation of Section 504 of Title V of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count I); the Due Process and Equal Protection Clauses of the Fourteenth Amendment (Counts II-IV); the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 (Count V); and the New Jersey Constitution (Count VI). Plaintiff further charges that these alleged violations caused him mental distress which required medical treatment (Count VII). This matter is before the Court on defendants' motion to dismiss plaintiff's complaint or, in the alternative, for summary judgment. The Department of Justice appears as amicus curiae and opposes defendants' motion insofar as it challenges plaintiff's Section 504 claim.

I.

The Facts
John Sabol and the Willingboro Board of Education entered into two successive contracts of employment, the first covering *894 September 1, 1978 to June 30, 1979, and the second from September 1, 1979 to June 30, 1980. Both contracts provided for termination by either side with sixty (60) days notice. Before the expiration of the first contract, Sabol was severely injured in an automobile accident, limiting his ability to walk for a period of several months and necessitating the use of a wheelchair and crutches. As a result of these injuries, Sabol was absent from his teaching duties for the months of May and June in 1979.
On August 29th, 1979, Sabol wrote to the Superintendent of the defendant School District and indicated his desire to resume his teaching duties at the beginning of the 1979-80 school year (see Exhibit A attached to plaintiff's complaint). However, because the plaintiff temporarily required the use of a wheelchair and crutches, the Superintendent felt that Sabol was not capable of performing his teaching duties and therefore denied his request (see Exhibit B attached to plaintiff's complaint). Subsequently, the Superintendent informed Sabol that he could submit to a physical examination by the defendant's medical examiner in order to determine whether Sabol could return to teaching. The examination was performed in late September and, according to the plaintiff, never involved any diagnostic tests or requests for documentation from the plaintiff's treating physician. The results of this examination are not mentioned in the complaint, but it may fairly be assumed that the results were not favorable to the plaintiff because on October 9th, 1979 the defendant Board of Education voted to terminate Sabol's contract of employment, citing his physical disability as the basis of its decision (see Exhibit C attached to plaintiff's complaint). In its letter of discharge, defendant Board gave plaintiff the sixty (60) days notice required in the contract of employment. On February 26th, 1980 plaintiff filed the instant action in federal court.
The defendant school district receives significant federal financial assistance under the Elementary and Secondary Education Act (ESEA), 20 U.S.C. § 1801, et seq., the Financial Assistance for Local Educational Agencies of Areas Affected by Federal activities, 20 U.S.C. § 236, et seq., and the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401, et seq. During the 1979-80 academic year, the defendant employed thirty (30) full-time persons using the Handicapped funding and twenty-six (26) others using the ESEA funding. In 1980-81, the defendant school district employed again thirty (30) full-time persons with the Handicapped funding and another twenty-one (21) persons with the ESEA funding. (See Defendant's Answers to plaintiff's second set of Interrogatories, Nos. 1-2.)

II.

The Rehabilitation Act Claims
Defendant School District argues that in the context of employment discrimination by federal grantees this Court should follow the reasoning of the Second, Fourth and Eighth Circuits and limit the coverage of § 504 of Title V of the Rehabilitation Act to instances where a primary purpose of the federal financial aid is to provide employment. United States of America v. Cabrini Medical Center, 639 F.2d 908 (2d Cir., Jan. 27, 1981); Trageser v. Libbie Rehab. Center, 590 F.2d 87 (4th Cir. 1978), cert. denied, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979); Carmi v. Metropolitan St. Louis Sewer District, 620 F.2d 672 (8th Cir.), cert. denied, ___ U.S. ___, 101 S.Ct. 249, 66 L.Ed. 117 (1980).
Plaintiff and amicus curiae attack the holdings in Trageser, Carmi and Cabrini as "simplistic" and submit that the statute's language, purposes and legislative history demonstrate an intent to cover recipients of federal aid regardless of the purpose of the federal financial assistance. If the Court adopts defendant's reading of § 504, plaintiff and amicus curiae argue, in the alternative, that plaintiff should be given the opportunity to prove that employment discrimination against him also constitutes discrimination against handicapped students  the undisputed intended beneficiaries of the federal financial assistance.
*895 Section 504 of Title V of the Rehabilitation Act of 1973, 29 U.S.C. § 794, makes it unlawful for otherwise qualified handicapped individuals to "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" solely because of their handicaps.[1]
All parties agree that as with Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq.,[2] § 504 of Title V of the Rehabilitation Act requires for a claim to be actionable that the handicapped plaintiff be the intended beneficiary of or a participant in a federally funded program or activity. Simpson v. Reynolds Metals Co. Inc., 629 F.2d 1226 (7th Cir. 1980).
Plaintiff Sabol argues that he is both a participant in and an intended beneficiary of the federal financial aid received by the defendant district.
As already noted, the defendant school district receives substantial amounts of federal financial assistance for its educational programs and studies. In particular, the district receives federal financial assistance under the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401, et seq. These funds are received to educate handicapped students in special education classes. Additionally, school districts which receive funds under this Act are required to take affirmative action to employ handicapped teachers. 20 U.S.C. § 1405 (1975). Although Sabol's salary was not paid with such federal funds, he did, in fact, teach two hours per week under this federally aided program. (See Affidavit of Dr. Peter J. Romanoli, ¶ 3.) From this fact, plaintiff argues that he is a participant in a federally funded program and that as a handicapped teacher who teaches handicapped students he is also an intended beneficiary of the particular grant statute.
Defendant district disagrees, and contends that plaintiff's limited involvement with the handicapped students  a mere two hours per week  was not sufficiently significant to bring Sabol within the intended beneficiary or participant category of the federal grant statute.
The Court, too, questions the validity of plaintiff's theory. However, defendant also contends that the rights of an intended beneficiary or participant under § 504 are further limited by § 505(a)(2)'s incorporation of Title VI, which permits enforcement only where "a primary objective of the Federal financial assistance is to provide employment". If this provision is applicable, plaintiff Sabol, who charges employment discrimination, could not bring this suit under § 504 even though found to be an intended beneficiary or participant. Thus, it must first be determined whether private actions for employment discrimination brought under § 504 are permissible only where a primary objective of the federal financial aid is to provide employment. Put another way, the issue is whether § 505(a)(2) incorporates § 604 of Title VI.
*896 In 1978, Congress amended the Rehabilitation Act to provide an administrative enforcement mechanism for § 504. That amendment, § 505(a)(2), provides:
The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any persons aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 504 of this Act.
29 U.S.C. § 794.
But Title VI, which Title V incorporates, specifically limits the action of federal departments or agencies to employment practices in programs receiving federal financial assistance that has a primary objective of providing employment. § 604 of Title VI provides:
Nothing contained in this title shall be construed to authorize action under this title by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.
42 U.S.C. § 2000d-3.
The Willingboro Board of Education receives no federal funds with a primary purpose of providing employment. The aid it receives is for the benefit of educational programs and students (See Romanoli Affidavit, ¶ 2). The plaintiff does not dispute this fact.
All the circuit courts which have addressed the issue to date have concluded that § 505(a)(2) incorporates § 604 of Title VI.
In Trageser v. Libbie Rehabilitation Center Inc., supra, the Court held that a "private action under § 504 to redress employment discrimination ... may not be maintained unless a primary objective of the federal financial assistance is to provide employment". In holding that § 604 was expressly incorporated via § 505(a)(2), the Court found persuasive that in the 1978 amendment Congress had utilized Title VII (which contains no limitations on suits by victims of racial or ethnic discrimination) to define the rights and remedies of federal employees who complained of handicap discrimination in employment in violation of § 501 of the Rehabilitation Act, 29 U.S.C. § 791, and, in contrast, had utilized the rights and remedies of Title VI for a person in the plaintiff's position who had to rely on § 504 for relief. The Court reasoned that this distinction in available relief for federal employees and for private employees could not have been inadvertent, and, furthermore, found no controlling legislative history to counter its conclusion. Thus, the Court affirmed the dismissal of the employment discrimination complaint of a handicapped employee in a health care institution that received no federal financial aid to provide employment.
In Carmi v. Metropolitan St. Louis Sewer District, supra, the Eighth Circuit followed the analysis of the Trageser Court and found that the limitation of § 604 applied to private actions brought under § 504 of Title V.
Recently the Second Circuit considered the issue and agreed with the holdings in Trageser and Carmi. In United States v. Cabrini Medical Center, supra, the Court found the clear meaning of § 505(a)(2) of the 1978 amendment to the Rehabilitation Act to require incorporation of all the provisions of Title VI, including § 604. The Court, therefore, held that HEW could not investigate an employment discrimination complaint against Cabrini Medical Center under § 504 because a primary objective of the federal funds received by the hospital (Medicaid and Medicare) was not to provide employment. Accord, Guertin v. Hackerman, 496 F.Supp. 593 (S.D.Tex.1980); Brinkly v. Department of Public Safety, 22 F.E.P. Cases 164 (N.D.Ga.1980). Contra, Hart v. County of Alameda, 485 F.Supp. 66 (N.D.Cal.1979).
Plaintiff submits that the Trageser, Carmi and Cabrini Courts' interpretation of the 1978 amendments is in direct conflict with the language and purpose of the statute, its amendments, its legislative history, and HEW's administrative interpretation. According to the plaintiff, the legislative history *897 confirms that the Act was enacted in direct response to Congressional concern over the employment problems and discrimination facing handicapped individuals, and that this legislative intent is buttressed by the administrative regulations interpreting § 504. Plaintiff contends that in enacting the 1978 amendments Congress intended to expand the remedies available under § 504 not limit them. Thus, plaintiff concludes, since § 604 limits the substantive coverage of § 601 of Title VI rather than providing a remedy, procedure or right, it is inapplicable to § 504.
Contrary to plaintiff's reading of the legislative history of the Act and its amendments, I do not find clear evidence in the legislative history of a Congressional intent to maximize protection against employment discrimination by federal grantees. The 1973 reports reveal that the major thrust of the Rehabilitation Act was a reorganization and enhancement of federal aid programs for handicapped persons. E. g., S.Rep. 93-318, 93d Cong. 1st Sess. 18 at 21, reprinted in [1973] 2 U.S.Code Cong. and Admin.News 2076, at 2095. The description of the bill's purposes in the House report omits any references to discrimination, and § 504 is not mentioned in the summary of major provisions but instead is listed under "miscellaneous Provisions". In fact, § 504 was enacted with little debate or discussion. As S. David Tatel, then Director of HEW's Office of Civil Rights, told a Congressional Oversight panel in 1977:
The development of the [Section 504] regulations was difficult because of the absence of substantive legislative history; Section 504 was enacted without floor debate in either body of Congress.

Oversight Hearings, Select Subcomm. on Education and Labor on the Implementation of Section 504, 95th Cong., 2d Sess., at 291 (1977). (Emphasis added.)
The 1973 Committee reports contain only two direct comments which do not simply paraphrase the pending bill. These state that the intent of § 504 was to bar discrimination "under federal grants". S.Rep. 93-318, supra, at 18, [1973] 2 U.S.Code Cong. and Admin.News, supra, at 2092; H.R.Rep. 93-244, 93d Cong., 1st Sess. 8 (1973). Without more, it cannot be said that these statements provide clear evidence of Congressional intent to establish a broad ban on employment discrimination against the handicapped.
Similarly, the 1978 legislative history is incapable of such an interpretation of Congressional intent. Nothing in the Congressional hearings has been cited demonstrating that Congress was made aware of, or that Congress intended for HEW to cover, all the employment activities of federal grant recipients. Moreover, the HEW regulations actually are consistent with the limited coverage provided in Trageser, Carmi and Cabrini for employment discrimination under § 504. 84 C.F.R. § 84.11(a)(1) declares:
No qualified handicapped person shall, on the basis of handicap, be subjected to discrimination in employment under any program or activity to which this part applies. (Emphasis added.)
The regulation also provides that:
A recipient shall make all decisions concerning employment under any program or activity to which this part applies in a manner which ensures that discrimination on the basis of handicap does not occur ... (Emphasis added.)
45 C.F.R. § 84.11(a)(3).
The language in these regulations merely copies the words of § 504 and, therefore, would not have served to alert Congress when amending the Act in 1978 of any intention by HEW to cover employment discrimination under § 504 more broadly than under Title VI.
Thus, the Congressional intent with respect to § 504's coverage for employment discrimination cannot be determined by examining the legislative history or the administrative regulations. Instead, this Court must look to the plain meaning of the statute and judicial interpretation of the statutory language.
On its face, § 505(a)(2) refers to all of Title VI  its rights, remedies and procedures. Plaintiff's distinction that § 604 *898 pertains not to rights, but to limitations on rights, is a distinction without meaning. Because § 505(a)(2) incorporates all of the rights, remedies and procedures of Title VI, this necessarily includes the incorporation of the provision in § 604 permitting relief for employment discrimination whenever a primary purpose of the federal financial assistance is to provide employment. The circuit courts which have considered the issue have uniformly agreed with this interpretation. United States of America v. Cabrini Medical Center, supra; Trageser v. Libbie Rehab. Center, supra; and Carmi v. Metropolitan St. Louis Sewer District, supra. Accordingly, I hold that § 505(a)(2) incorporates § 604 of Title VI into § 504 of Title V.
As an alternative means of relief, Sabol contends that he may still maintain an action under § 504 if he can show that discrimination against him in employment also resulted in discrimination against the direct beneficiaries of the financial aid  handicapped students, citing Simpson v. Reynolds Metals Co., Inc., supra, which relies on Caulfield v. Board of Education, 486 F.Supp. 862 (E.D.N.Y.1980); and United States v. Jefferson County Board of Education, 372 F.2d 836 (5th Cir. 1966), aff'd en banc, 380 F.2d 385, cert. denied sub. nom., Caddo Parish School Board v. United States, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967). Thus, plaintiff submits that his discharge deprived handicapped students of the benefit of a teacher who, because of his own disability, may have been highly effective in teaching other disabled persons, and also deprived handicapped students of the opportunity to identify with a role model of a physically disabled individual functioning effectively in a teaching position. Plaintiff also maintains that defendants' actions have sent a clear message to handicapped students that society believes they will be unable to work. Sabol, therefore, requests an opportunity to develop the record to demonstrate that his dismissal and the denial to him of an opportunity to teach as a handicapped instructor also discriminated against Willingboro's handicapped students.
It is difficult to conceive that plaintiff will be able to prove with extended discovery that discrimination against him was also discrimination against the students. As defendant points out, the record developed in the case to date demonstrates a lack of harm to the handicapped students. First, Sabol removed himself from the classroom after his accident so that he, not the school district, made it clear to the students that he was too handicapped to continue teaching. Second, since Sabol never taught in the 1979-80 school year, the students could not have perceived, at the time of Sabol's termination in October, 1979, that he was discharged because of his handicap. Third, plaintiff was an irrelevant role model to the handicapped children he taught because those students were not physically handicapped like the plaintiff but, instead, were emotionally and mentally handicapped.
However, leave need not be granted to the plaintiff for further discovery on this issue. Assuming that plaintiff will be able to prove that defendants' acts of discrimination against him in employment also harmed the handicapped students in Willingboro, this is not enough to bring plaintiff within the protections of § 504 of Title V.
Plaintiff correctly cites Simpson v. Reynolds Metals Co. Inc. to hold that an action for employment discrimination under § 504 may be brought if the handicapped individual can "show that the discrimination directed against him affected the beneficiaries of such aid". 629 F.2d at 1227.[3] *899 The reach of this statement, however, is not as broad as it first appears. The Simpson Court relied on the decisions in United States v. Jefferson County Board of Ed., supra, and Caulfield v. Board of Education, supra, both Title VI actions. These cases clearly indicate that teacher discrimination is equivalent to discrimination against students only where broad policies of hiring and assignment are involved, not where a solitary case of employment discrimination occurs. As stated by the Court in United States v. Jefferson County Board of Education:
Congress did not, of course, intend to provide a forum for the relief of individual teachers who might be discharged; Congress was interested in a general requirement essential to success of the program as a whole.
372 F.2d at 883.
Thus, in order to demonstrate that the defendants' discrimination against the plaintiff constituted discrimination against the students, plaintiff must allege facts demonstrating that the defendant school district is pervasively barring handicapped teachers from teaching, or segregating them to teach only handicapped students. Allegations of "individual teachers who might be discriminatorily discharged" are insufficient. Otherwise, the intended limitation of § 604 would be effectively circumvented.
Here, plaintiff Sabol, in his complaint, has alleged only facts demonstrating a case of solitary discrimination. In fact, plaintiff specifically charges that some handicapped individuals were allowed to teach while plaintiff was not. (Complaint, ¶ 29.) Because plaintiff's action is one for an individual instance of employment discrimination, under the reasoning of Jefferson County and Caulfield, the facts alleged in plaintiff's complaint cannot also support a claim of discrimination against the handicapped students in Willingboro.
In conclusion, since a primary objective of the federal aid received by Willingboro was not to provide employment, and since the plaintiff has not alleged a pattern or practice of discrimination against the handicapped by the defendants harming the plaintiff as well as the protected beneficiaries of the aid, plaintiff is not entitled to relief under § 504 of Title V. Accordingly, summary judgment in favor of the defendants will be entered on Count I.

III.

The Constitutional Claims
In his complaint, plaintiff Sabol also seeks relief under both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.[4] In the present motion, defendants move to dismiss plaintiff's constitutional claims asserting that as a matter of law plaintiff is not entitled to such relief. When the matter was briefed and argued before this Court, the central focus of the motion was on the plaintiff's Title V claims, and understandably little attention was given to the plaintiff's Due Process and Equal Protection claims. These questions, however, do raise very significant and complex issues which deserve the Court's full consideration. Accordingly, I will defer ruling on the remainder of defendants' motion so that the issues may be re-briefed and the record more fully developed. The parties may, if they wish, submit affidavits in support of their positions.
When re-briefing, the parties should focus on the following considerations:
(i) Does N.J.S.A. 10:5-4.1, which prohibits employment discrimination against the physically handicapped, create a liberty or property interest protectible under the Due Process Clause of the Fourteenth Amendment, Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), or
*900 (ii) Does the New Jersey statute create no more than a state law remedy for the plaintiff? Cf. Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).
(iii) Assuming that plaintiff has a protected liberty or property right under the Due Process Clause:
(a) What procedural rights, if any, should plaintiff have been afforded by the defendant district, Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).
(b) Were the defendants' actions in electing to terminate the plaintiff's contract of employment arbitrary or capricious? Harrah Independent School Dist. v. Martin, 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979); Kelley v. Johnson, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1975).
(iv) With respect to plaintiff's equal protection claims:
(a) Did the defendant school district treat plaintiff differently from similarly situated handicapped teachers?
(b) Was the difference in treatment accorded the plaintiff rationally related to a legitimate goal of the defendant school district? Harrah Independent School Dist. v. Martin, supra.

The attorneys for the defendants shall submit an order consistent with this opinion and consented to as to form within ten (10) days of the date hereof.
NOTES
[1] In its entirety, § 504 reads:

No otherwise qualified handicapped individual in the United States, as defined in section 7(7) shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.
In N.A.A.C.P. v. Medical Ctr., Inc., 599 F.2d 1247 (3d Cir., 1979), the Third Circuit held that a private cause of action exists under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.
[2] Section 601 of Title VI provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
42 U.S.C. § 2000d.
[3] In Simpson, the defendant company received federal financial assistance for on-the-job training of veterans. The plaintiff, a non-veteran, did not qualify for participation in that program and the Court, therefore, concluded that plaintiff lacked standing because he was not an intended beneficiary of the federal financial assistance received by his employer. The Court further noted that "we cannot conceive of any way in which the alleged discrimination against Simpson affected the intended beneficiaries of the federal financial assistance" (n. 16) but permitted the question whether discrimination against the plaintiff constituted discrimination against the intended beneficiaries of the federal financial assistance to be proved in another case.
[4] Plaintiff also has pendent state claims under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-4.1, and the New Jersey State Constitution.