Gary J. BRUEGGING, Plaintiff,

v.

Frank G. BURKE, Acting Archivist, et al., Defendants.

Civ. A. No. 86–3479.

United States District Court,
District of Columbia.

Oct. 23, 1987.

Francis R. Ridley, Jr., Washington, D.C., Harvey M. Schweitzer, Takoma Park, Md., for plaintiff.

Michael L. Martinez, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

After a full bench trial and consideration of post-trial briefs, the Court enters the following findings of fact and conclusions of law in this handicap discrimination case.

Mr. Bruegging is employed as a GS–9 in the Office of Federal Register ("OFR"), a unit of the National Archives and Records Administration ("Archives"). He is a qualified handicapped individual[1] by reason of his cerebral palsy which causes a hand tremor, affects his speech somewhat, and influences his gait.

Mr. Bruegging contends he failed promotion because of his handicap on several occasions. He also urges that Archives has not fulfilled its affirmative action obligations as an employer in its relations with him as an employee under Section 501 of the Rehabilitation Act of 1973, as amended (29 U.S.C.A. § 791 (1985 & Supp.1987)).

A routine prima facie case was established by showing that on several occasions Mr. Bruegging qualified for GS–11 vacancies that opened at OFR in the competitive service, that he applied but was not selected and a non-handicapped individual was chosen.

In 1972 Mr. Bruegging began his career at Archives in a temporary position and by October 1976 was promoted to Legal Publications Specialist GS–9. In March 1977 his position was converted to the Career Competitive Service. On October 10, 1977 he became eligible to compete for GS–11 positions. Thereafter, he failed selection for GS–11 vacancies on five occasions he has

---

1. "Qualified handicapped individual" is defined at 29 C.F.R. § 1613.702(f) (1987) as one "who with or without reasonable accommodation can perform the functions of the position in question without endangering the health and safety of others...."

placed in issue here between July 1984 and March 1987. He has remained a GS–9 and presently his position, as retitled, is Technical Publications Writer/Editor, OFR Finding Aids Unit, where he edits the table of contents of the daily *Federal Register* under GS–11 supervision and handles some of the many telephone inquiries.

Mr. Bruegging and others in OFR working on the several publications of the *Federal Register* are held to an exacting, well above average standard of accuracy. These publications cannot serve their important governmental purpose if mistakes appear by way of miscitations, incomplete or incorrect cross-references, omissions, and the like. As a GS–9 Mr. Bruegging's work has been subject daily to detailed review for accuracy by others. As a GS–11 he would be personally responsible for final editing with direct authority to release material to the printer. His tendency on repeated occasions to make often significant errors has led selecting officials to choose other employee applicants over Mr. Bruegging, whose overall performance and accuracy were deemed clearly superior.

■ Each GS–11 job for which Mr. Bruegging applied was such that accuracy was job related and outstanding ability in this regard was required as a matter of business necessity. The Court is wholly satisfied that the extensive testimony of the selection officials was in each instance credible. Each selection placed in issue by the complaint was thoroughly reviewed against underlying documents which completely reinforced testimony of the selecting officials and other supervisors. There was no evidence of discrimination. Their choice of others over Mr. Bruegging for superior accuracy and because of overall superior qualifications was not protected.

Five selections for promotion to GS–11, each advertised by a Vacancy Announcement ("VA") are in issue in this proceeding, to wit: VA 84–12 (two selected July 19, 1984); VA 85–12 (three selected April 30, 1985); VA 85–24 (one selected May 14, 1985); VA 85–37 (one selected November 5, 1985); VA 87–12 (one selected March 12, 1987).

One handicapped person (hearing) was chosen in VA 84–12. In VA 85–12 Mr. Bruegging was given priority consideration by reason of a union grievance but was unsuccessful after detailed and sympathetic consideration by the selecting official. Later, when his application was considered against competitors, he again failed selection. In VA 85–24 the selectee was handicapped from cerebral palsy and this selection cannot be considered because Mr. Bruegging never contacted the Equal Employment Opportunity Commission. In VA 85–37 and VA 87–12 neither selectee was handicapped. Three different selecting officials were separately involved in one or more selections.

In all instances Mr. Bruegging was among the best qualified and his record was carefully reviewed. Competition for the positions was keen. The selecting officials were familiar with most applicants' work, partly because of the constant checking and cross-checking that occurs between GS–11 supervisors and GS–9's to eliminate errors and to be sure of absolute accuracy. In all instances the ratings of those selected were superior to Mr. Bruegging's ratings in significant respects. He lost out on the one occasion he received priority consideration under the union grievance procedure because his supervisor, who had worked with him to decrease errors and who had demonstrated unusual interest in creating job opportunities for handicapped persons, found him not qualified for GS–11 responsibility due to his inability to perform consistently accurate work and his substantial errors.

This is an unfortunate case. Mr. Bruegging is a fine public servant. He has worked steadily and given satisfactory service. It is natural that his long tenure at GS–9 disturbs him. Others doing the same kind of work, both handicapped and non-handicapped, have advanced to higher grades in much shorter time at OFR. But grade promotion in the competitive service is based on performance, not tenure. Accuracy is the number one critical element and an essential job requirement for a GS–11 working at OFR. It is apparent from

concrete examples of Mr. Bruegging's day-to-day work and other proof of record that Mr. Bruegging has been unable to meet this crucial element of a GS–11 position.[2] Moreover, it must be noted that there is absolutely no clear proof[3] of any kind indicating that his lack of accuracy is the result of or related in any way to his cerebral palsy. Without such proof, there would not appear to be even a colorable case presented here.

Given these deficiencies, plaintiff's counsel has taken an alternative approach which must be considered. His brief states that "affirmative action is the heart and soul of this case" (Plaintiff's Brief, p. 16), and urges that some effort beyond nondiscrimination and reasonable accommodation is mandated by the Rehabilitation Act of 1973, as amended, when handicapped individuals are thwarted by failures to promote.

■ Even assuming that there is an obligation to accommodate a performance defect not demonstrated as related to an individual's handicap,[4] accommodations were made for Mr. Bruegging's palsy. He was not required to perform the same volume of work as his GS–9 colleagues, he was assigned tasks that avoided numbers to minimize the possibility of mistakes, he was given special parking, telephone equipment and an improved typewriter as soon as available. Weekly counselling sessions went forward until he refused to continue them. His supervisors regularly made sure he was informed of his errors and given opportunity to discuss them along with suggestions as to how he should improve.

Nonetheless, the Court is urged to find as a matter of law that these accommodations were not enough because under Section 501 of the Act more affirmative action is required. It is suggested that Archives should not have refused Mr. Bruegging the aid of "a rehabilitation or similar expert"; that he should have been given a "trial period" to do the work of a GS–11, presumably without qualifying competitively; and that the duties of a GS–11 position itself could have been changed to minimize the effect of his tendency to error.

■ Since a high degree of accuracy is an essential requirement of all GS–11 positions at OFR, OFR is not required by Section 501 or otherwise to lower its high standard of accuracy because Mr. Bruegging cannot meet them. Moreover, GS–11's presently check his work for accuracy and counsel him. The "trial period" concept would necessitate the same supervision and necessarily the same result and would accomplish nothing. In these respects, at least, plaintiff's counsel's concept of affirmative action is carried too far. *Cf. Prewitt v. United States Postal Service,* 662 F.2d 292 (5th Cir.1981).

The question remains whether Archives has met its burden of establishing that all reasonable accommodation has been attempted to alleviate Mr. Bruegging's error performance. Plaintiff's counsel offered expert testimony suggesting that possibly

---

**2.** Throughout, Mr. Bruegging has requested a statement specifying the precise standard of accuracy he is required to meet. There is none but it is clearly something more exacting than average. It is not, as the proof indicated, a matter of counting. Some errors of spelling, for example, may be less important than errors of substance that make the *Federal Register* ineffective for lack of adequate legal notice. Mr. Bruegging has not only continued to make frequent substantive errors but his performance is erratic and hence unpredictable. He is correct one day and incorrect the next day on the same item. He repeats errors brought to his attention. Selecting officials must not be put into some kind of numerical straight jacket but should be allowed to apply judgment to written appraisals where supported, as in this instance, by defective work product and personal knowl-

edge of the selecting official that leaves no doubt an applicant cannot meet an essential job-related standard.

**3.** The most the record shows is that Mr. Bruegging stated to one of his supervisors that someone at HUD with cerebral palsy said that "catching one's own mistakes is a common problem for victims of cerebral palsy." When Mr. Bruegging indicated to a supervisor that his inaccuracy seemed to reflect days his coordination was "worse," he was advised to inform his supervisor and take a rest if this occurred. Thereafter he apparently never did. Defendant's Exhibit 1, Tab 10.

**4.** The Court does not so hold.

Mr. Bruegging, who has the capacity to learn, would be aided by regular weekly follow-up sessions.

There is nothing in the record that explains Mr. Bruegging's inconsistent and sometimes significantly erroneous performance. Thus there is no indication beyond this follow-up suggestion as to how his work product could be made more error free. The expert purported to assess Mr. Bruegging's tendency to err and believed it was average. If so, average is well below the OFR standard for GS–11 which is not surprising given the exacting nature of *Federal Register* work. Furthermore, the expert's suggestion there may have been "too little feedback" is based on limited observation and is not supported by the proof. The proof demonstrated that Mr. Bruegging received far more than that until he resented the close attention and refused weekly reviews. Thereafter his errors were identified to him and reviewed continuously in an effort to improve his performance. Thus there is no proof that anything could be done that was not attempted affirmatively to advance Mr. Bruegging to GS–11.

Like all federal agencies, Archives is required in a broad sense to avoid handicap discrimination and to increase the participation of handicapped employees by their hiring, placement and promotion policies. They have done this commendably well in the very area where Mr. Bruegging works.[5] Archives has had an exemplary record in furthering job opportunities for the handicapped. Of OFR's 70 employees, 8.5% are handicapped; three are GS–12 and one is GS–11. This compares with the Federal Government average of 1.01%. Archives as a whole has a 2.85 percentage. Ruth Pontius, Mr. Bruegging's unit chief, has been unusually interested and continuously helpful to him. Handicapped herself, she has had long experience and professional interest in problems of the handi-

capped. Throughout his work experience in her unit Mr. Bruegging has been treated by her and others with respect, understanding and extraordinary personal attention in a continuing effort to assist him. Both the letter and spirit of the law have been met.

While Mr. Bruegging has sought to better himself, obtaining post-college graduate training and undoubtedly doing his best, he has not been able to avoid inaccuracy in his work. His tendency to err has prevented him from advancing after all known efforts to correct this tendency have been exhausted.

The claims of discrimination based on non-selection for GS–11 must fail. Mr. Bruegging failed to perform the critical and essential elements of the GS–11 positions. Archives has met its burden to demonstrate that all possible accommodation was made and that the agency met its affirmative action obligations.

Judgment shall be entered for the defendants and the complaint dismissed, with prejudice. The Clerk of Court shall enter judgment accordingly. It would be inappropriate to assess costs in this case.

---

**5.** If, as it appears, Mr. Bruegging has reached his full potential for promotion with the *Federal Register,* it is possible some other position is available in Archives where he can advance. At one point Archives explored this possibility and found no vacancy available. Whether there are positions, if vacant, for which Mr. Bruegging could qualify for consideration does not appear and plaintiff's counsel makes no such claim. Archives made a consciously generous effort to assist Mr. Bruegging to obtain a job in other agencies from time to time when he applied.