Stanley BLIZZARD, Plaintiff,

v.

John H. DALTON, Secretary, Department of the Navy, Defendant.

Civ. A. No. 2:94cv984.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 1, 1995.

**332**

Andrew Robert Sebok, Norfolk, VA, for Stanley Blizzard.

George M. Kelley, III, United States Attorney's Office, Norfolk, VA, for John H. Dalton.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

### INTRODUCTION

Plaintiff, whose left knee is impaired, claims that the Secretary of the Navy discriminated against him by failing to implement an affirmative action program to enable him fairly to compete for a promotion. Plaintiff's discrimination claims are pursuant to the Vietnam Era Veterans Readjustment Assistance Act ("VEVRA"), § 403(a)(c), 38 U.S.C.A. § 4214(c) (West 1991), and § 501 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 791(b) (West Supp.1995). After conducting a bench trial and reviewing proposed findings of fact and conclusions of law submitted by both parties, this Court **GRANTS** judgment for the Defendant.

### I. FACTS

After being honorably discharged from the United States Army, Plaintiff began working at the Norfolk Naval Shipyard (NNSY) in 1978. (R. at 33.) In 1979, he began working in the NNSY electrical shop, Shop 51, at the rank of WG–5 (electrician's helper). (R. at 34.) In 1981, the Veterans Administration determined that Plaintiff suffered a ten per-

cent disability of his left knee, which prevented him from performing shipboard work. (R. at 55.) Instead, he worked solely in the electrical shop. (R. at 58.) He was promoted to the rank of WG–8 (electrical worker) in 1989. (R. at 37–38.) In 1991, five new WG–10 (journeyman electrician) positions were announced, which were selected in January 1992 from fifteen candidates who had rated "best qualified". (R. at 25, 67.) Plaintiff, who had been among the fifteen "best qualified" candidates, was not selected.[1] Plaintiff claims that he was not selected because the promotion system does not provide an alternative route for veteran employees with disabilities to advance or to obtain experience commensurate with shipboard experience, which he alleges predominates the selection criteria. (*See* R. at 16.)

Plaintiff filed a complaint with the Equal Employment Opportunity Commission, claiming that the Navy's failure to promote him constituted discrimination on the basis of his disability. On October 15, 1993, the Navy issued a final decision denying Plaintiff's claim.[2] The EEOC affirmed this decision on September 9, 1994. (Def.'s Mem. of Points and Auth.Ex. H.) Plaintiff filed this federal action on October 11, 1994.

### II. DISCUSSION

#### A. *The VEVRA Claim*

VEVRA is intertwined with the Rehabilitation Act. Section 501 of the Rehabilitation Act prohibits federal employers from discriminating on the basis of handicap, requiring them to make reasonable accommodation for qualified individuals with disabilities unless it would impose an undue hardship. 29 C.F.R. § 1613.704(a) (1994). It further requires federal government employers to implement affirmative action plans for individuals with disabilities. 29 U.S.C. § 791(b). *See supra* part III.B. VEVRA incorporates this affirmative action requirement, providing in pertinent part:

---

**1.** Plaintiff had also unsuccessfully applied for a promotion to the rank of WG–10 in 1990. (R. at 38.)

**2.** This decision adopted the EEOC Administrative Judge's recommended decision, which denied Plaintiff's claim. (Def.'s Mem. of Points and Auth.Ex. G.)

Each agency shall include in its affirmative action plan for the hiring, placement, and advancement of handicapped individuals in such agency as required by section 501(b) of the Rehabilitation Act of 1973 (29 U.S.C. § 791(b)), a separate specification of plans ... to promote and carry out such affirmative action with respect to disabled veterans in order to achieve the purpose of this section.

38 U.S.C.A. § 4214(c) (West Supp.1995).

### 1. The Navy's Affirmative Action Plan

In the instant case, Defendant has promulgated an affirmative action policy plan at the NNSY to hire, train, and promote veterans with disabilities. (Def.'s Ex.s 1–6.) Relevant to the instant case, the policy requires "equal consideration" to be given for internal advancement. (Def.'s Ex. 4 at 4.)

Plaintiff claims that the Navy's failure to implement a more active, effective affirmative action program violated VEVRA's requirements. Indeed, NNSY supervisors revealed a significant lack of experience with or knowledge of any affirmative action policy for veterans with disabilities. (R. at 217, 236, 277.) Plaintiff argues that the Secretary of the Navy violated VEVRA by failing to provide training and promotion opportunities to veteran employees with disabilities. (R. at 18.) He claims that such an affirmative action policy would have allowed him to compensate for his inability to obtain shipboard experience, (R. at 296), and would therefore have enabled him to be selected for the promotion.[3] (R. at 303–05.)

The Court is not persuaded that Plaintiff suffered discrimination as a result of a lack of affirmative action program. The lack of such a nexus is fatal to Plaintiff's case. *See Adrain v. Alexander*, 792 F.Supp. 124, 129 (D.D.C.1992) (rejecting disability claim where poor job performance, rather than accommodation, restricted plaintiff's advancement); *Bruegging v. Burke*, 696 F.Supp. 674, 675–76 (D.D.C.1987) (rejecting disability discrimination claim where selection criteria was not the result of or related to plaintiff's disabili-

ty), *aff'd*, 976 F.2d 45 (D.C.Cir.1988). Instead, the Navy has proven that it based its nonselection of Plaintiff on the consideration of factors wholly unrelated to his disability.

### 2. Nondiscriminatory Factors in the Selection Process

The criteria and percentage weight utilized to evaluate the candidates were the following: work experience (75%), education (10%), training (10%), and personal monetary awards (5%).[4] (Def.'s Ex. 9.) The Navy's consideration of these categories did not discriminate against Plaintiff on the basis of his disability.

#### a. *Work Experience*

█ Plaintiff's claim relies heavily on the theory that his lack of shipboard experience, which he could not obtain because of his disability, was responsible for his nonselection. This claim collapses under the testimony of two of Plaintiff's own witnesses, Mr. Wardle and Ms. Freeman. Mr. Wardle, who worked as a WG–10 during the period in question, testified that some WG–10s never work on board ship. (R. at 228.) This statement indicates that shipboard experience is not a paramount consideration in promoting employees. Mr. Wardle also expressly stated that the inability to go on board ship does not prohibit obtaining the experience necessary to become a mechanic. (R. at 227, 228.) Most importantly, he testified that he had promoted people to the rank of WG–10 who did not have on-board experience, (R. at 227–28), and he knew of no employee who was not selected because she or he lacked shipboard experience. (R. at 228.)

Ms. Eleanor Freeman, who worked at the NNSY from 1979 through 1995, (R. at 267), similarly testified that it is possible for an employee of the rank WG–8 who has no shipboard experience to be promoted to a WG–10. (R. at 275.) She confirmed that some employees who hold the rank of WG–10 never go on board ship, (R. at 275–76), and testified that she knew of some WG–11s who had never worked on ships. (R. at 276.)

---

**3.** The WG–10 position was listed as possibly requiring shipwork duties. (Def.'s Ex. 9.)

**4.** This opinion highlights experience and training, which reflects Plaintiff's exclusive reliance on these factors to support his claim.

These two witnesses provide strong proof that shipboard experience was not fatal to advancement in the NNSY.

The evidence presented at trial proved that the Navy weighed prior work performance in a manner that did not penalize Plaintiff on the basis of his disability. Three of the candidates had previously held the rank of WG–10, and the remaining two candidates had six and four years more experience, respectively. (Def.'s Ex. 13b.) Plaintiff's lesser experience was not a result of his disability. His scores therefore did not compare favorably to the successful applicants, even disregarding Plaintiff's lack of shipboard experience. *Cf. Meisser v. Hove*, 872 F.Supp. 507, 517 n. 7 (N.D.Ill.1994).

These facts distinguish this case from failure-to-promote cases in which the plaintiffs' "inability to acquire the experience his competitors had to offer stemmed directly from the limitations of the work he was assigned, which in turn stemmed from his supervisors' concern about plaintiff's [disability]." *Id.* at 517.

### b. *Training and Education*

■ Plaintiff's lack of training reveals another nondisability-related factor that led to Plaintiff's nonselection. Plaintiff argues that VEVRA requires training and advancement programs specifically directed toward employees with disabilities. (*See* R. at 298–99). It is true that no programs were offered specifically for employees with disabilities to obtain a WG–10 grade. (R. at 275).[5] The relevance of this fact becomes questionable, however, in light of Plaintiff's failure to take advantage of the volunteer training opportunities that were available to him and which his disability did not prevent him from taking. Additionally, Plaintiff received fewer points for education than other candidates. Plaintiff did not enroll in relevant night courses that were available at Tidewater Community College,[6] for which the Navy reimburses employees, (R. at 282–83), nor voluntary correspondence courses. (R. at 71.) Neither of these training choices require approval from supervisors. (R. at 283.) The successful candidates for the WG–10 promotion had taken such courses, including transistors and AC theory. (R. at 72.)

Plaintiff points out that he dutifully took mandatory training courses throughout his employment. (R. at 38–39.) Indeed, Plaintiff has clearly performed satisfactorily at the NNSY. The line of Plaintiff's argument that relies on his good standing as an employee, however, does not sufficiently establish a case of discrimination. Although Plaintiff's frustration is understandable, he cannot claim discrimination when the successful candidates had acquired superior qualifications through training that was open to all employees. Plaintiff's claim that he did not know that voluntary training was available strains credibility. (R. at 41.) It is also noted that the selection criteria contains a five percent score for personal monetary awards. Plaintiff has no such awards. The successful candidates received points for monetary awards.

Primarily, therefore, training, experience, and monetary awards, rather than the Navy's lack of active effort to promote employees with disabilities, are the factors that led to Plaintiff's nonselection. Because this Court remains unconvinced of the connection between an affirmative action program and Plaintiff's advancement, it denies Plaintiff's VEVRA claim.

### B. *Rehabilitation Act Claim*

■ The Rehabilitation Act requires federal employers to make "affirmative efforts to overcome the disabilities caused by handicaps", *Southeastern Community College v. Davis*, 442 U.S. 397, 410, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979), by giving "full consideration to hiring, placement, and advancement of qualified ... physically handicapped persons ..." 29 C.F.R. § 1613.703 (1994).[7]

---

5. No programs exist to help employees obtain a WG–10 grade from a WG–8 rank. (R. at 275.)

6. Although Plaintiff took various night school courses, none of them dealt with electronics. (R. at 38–39.)

7. Section 505(a)(1) extends Title VII remedies, procedures, and rights to plaintiffs seeking relief pursuant to § 501, including a private right of action. *Trageser v. Libbie Rehabilitation Center, Inc.*, 590 F.2d 87, 89 (4th Cir.1978), cert. denied, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979); *Blizzard v. Dalton*, 876 F.Supp. 95, 98

This requirement is more stringent than the reasonable accommodation requirement of § 504, mandating affirmative action to aid employees with disabilities. *See Morgan v. United Postal Service,* 798 F.2d 1162, 1164 (8th Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). The plan must offer "sufficient assurances, procedures and commitments to provide adequate hiring, placement and advancement opportunities for handicapped individuals." 29 U.S.C.A. § 791 (West Supp.1995). The regulations do not further specify the nature of these plans, which are left largely to the discretion of the Defendant. *Shirey et al. v. Campbell et al.,* 1980 WL 276, *3 (D.D.C. Aug. 29, 1980). For similar reasons as articulated above concerning the VEVRA claim, this Court declines to hold that Defendant violated its duty under the affirmative action requirement by treating all applicants equally, without regard to disability.

 To establish a prima facie case under § 501, Plaintiff must show (1) that he is a person with a disability; (2) that he applied for and was denied a job by an entity that falls within the § 501 provision; (3) that he was qualified for the job except for his disability; and (4) that he can perform the essential functions of the position with reasonable accommodation without endangering the health or safety of himself or others. The burden of proof then shifts to the employer to show that suggested accommodations would impose an undue hardship or that it in fact provided reasonable accommodation.[8] Finally, the burden shifts once again to the plaintiff to rebut this evidence. *Adrain v. Alexander,* 792 F.Supp. 124, 128 (D.D.C.1992).

In the instant case, Plaintiff claims that Defendant's failure to promote him stemmed from its lack of affirmative action program to accommodate his disability. Defendant concedes that Plaintiff has established a prima facie case of discrimination. (Def.'s Concl. of Law at ¶ 8.) For the reasons stated above concerning the VEVRA claim, however, De-

fendant has proven that it offered adequate opportunities and affirmative action in relation to this Plaintiff. Plaintiff has failed to rebut this evidence by showing that the lack of accommodation prevented him from achieving the qualifications necessary to advance. *See id.* Even without considering shipboard experience, Plaintiff would not have had superior qualifications to the successful candidates, because he had lesser experience, and he did not pursue voluntary training opportunities that accommodated all employees. Therefore, it was not the lack of accommodation, but Plaintiff's own lack of experience and initiative to pursue voluntary training programs, that hindered his advancement in the instant case. *See id.* at 129.

## CONCLUSION

The Court having found that Plaintiff did not suffer discrimination based on his disability, the Court **GRANTS** judgment for the Defendant.

The Clerk is **DIRECTED** to send a copy of this order to counsel for Plaintiff and counsel for Defendant.

It is so **ORDERED.**

(E.D.Va.1995) (denying Defendant's Motion to Dismiss).

8. Defendant's argument that it met its burden by articulating nondiscriminatory reasons for its actions is therefore misplaced. (*See* Def.'s Concl. of Law at ¶ 10.)